NATIONAL LATEX PRODUCTS COMPANY, PLAINTIFF *v.* UNITED
STATES, DEFENDANT

Before NEWMAN, Judge.

Court No. 81–7–00898

(Dated November 18, 1981)

*Sharretts, Paley, Carter & Blauvelt, P.C. (Gail T. Cumins*, Esq., of counsel) for
the plaintiff.

*J. Paul McGrath*, Assistant Attorney General, *David M. Cohen*, Director,
Commercial Litigation Branch, and *Velta A. Melnbrencis*, Esq., for the defendant.

NEWMAN, *Judge:* Defendant has moved for a protective order
regarding documents numbered 8 (with attachments) and 12 contained
in the administrative record filed with the Court in this action contest-
ing the dismissal by the United States Department of Commerce
of plaintiff's countervailing duty petition regarding toy balloons and
playballs from Mexico.[1]

Defendant's motion is supported by an affidavit of Lionel H. Olmer,
Under Secretary for International Trade, United States Department of
Commerce,[2] claiming governmental privilege for documents numbered
8 and 12. These documents allegedly are intra-agency communications
containing "legal and policy analyses and recommendations," the
disclosure of which, in Mr. Olmer's opinion, "would seriously impede
the free flow of essential advice and recommendations necessary for
effective decision-making."

In opposition to defendant's motion, plaintiff maintains that the
documents in question do not fall within the scope of the govern-
mental privilege respecting intra-agency communications; and plain-
tiff further insists that its need for the documents in order to assert
its claim outweighs any harm that would result to the Government's
decision-making process if the documents were released.

The Court has determined that defendant's motion for a protective
order should be granted.

The pertinent factual background follows:

On May 14, 1981 plaintiff filed a petition with Commerce under
section 303 of the Tariff Act of 1930, as amended (19 U.S.C. § 1303),

---

[1] No demand for any privileged documents has been made by plaintiff or any intervenor, and defendant's
motion has assertedly been made "in order to comport with the Court's procedural interpretation in "*South-
west Florida Winter Vegetable Growers Association* v. *United States*, 85 Cust. Ct. 107, C.R.D. 80–7 (1980)."

[2] Plaintiff has expressly declined to contest Mr. Olmer's authority to assert a claim of privilege on behalf
of the Department of Commerce, and accordingly any issue as to whether the affidavit was submitted by the
head of the agency is pretermitted. It has been noted, however, that in *Roses, Inc.* v. *United States*, 1 CIT116,
Slip Op. 81–4 (1981), the requisite affidavit by the head of the agency having control of countervailing duty
determinations was executed by Philip N. Klutznick, then Secretary of the Department of Commerce.

requesting that countervailing duties be imposed on the importation of toy balloons and playballs from Mexico. But plaintiff's petition did not allege nor furnish information respecting injury to an industry in the United States. In the Federal Register Notice of June 17, 1981 (46 FR 31698), Commerce dismissed plaintiff's petition predicated on the conclusion "that in this case an allegation of injury to the United States industry is a necessary component of the petition." Continuing, the June 17, 1981 Notice states:

> This conclusion is based on the decision by the United States Department of the Treasury in a 1978 case involving other Mexican duty-free products. In the August 28, 1978 notice of initiation of this case (43 FR 38482) Treasury stated:

>> The imported merchandise classifiable under item numbers 705.3000, 791.7820, and 791.7680 of the tariff schedules of the United States, annotated (TSUSA) are eligible for duty-free entry under the generalized system of preferences. In the event that it becomes necessary to refer this case to the U.S. International Trade Commission pursuant to section 303(a)(2), Tariff Act of 1930, as amended (19 U.S.C. 1303(a)(2)), there is evidence on record concerning injury, or likelihood of injury, to an industry in the United States with regard to these duty-free imports.

> In the absence of any subsequent action prior to this petition rendering the 1978 decision inapplicable to cases involving duty-free imports from Mexico, we have determined in this case that countervailing duties may not be imposed unless there is an affirmative determination concerning injury. Because of the absence of any allegation of injury, the petition, which is satisfactory otherwise, does not allege the elements necessary for the imposition of countervailing duties. We are dismissing the petition and terminating the proceeding without prejudice to the right of the petitioner to submit a revised petition that includes the necessary allegation and supporting information on injury.

It is plaintiff's position in this action that since Mexico is not a signatory of the General Agreements on Tariffs and Trade (GATT), and since the United States and Mexico have not entered into an agreement requiring that an injury determination be made for the United States to impose countervailing duties on duty-free Mexican imports, no allegation of injury was required in plaintiff's countervailing duty petition.[3] The Government's answer to the complaint concedes that Mexico is not a signatory to the GATT and that no commercial agreement exists between Mexico and the United States requiring an injury determination in this matter.

The two documents in question have been reviewed by the Court *in camera* and are found to be properly represented in defendant's

---

[3] This issue is not before the Court at this juncture, and the present issue relates solely to disclosure.

moving papers and in Under Secretary Olmer's affidavit. It is well established that a qualified privilege of nondisclosure attaches to intra-agency documents reflecting advisory opinions, recommendations, and deliberations comprising part of the process by which Governmental decisions are formulated. See *EPA* v. *Mink*, 410 U.S. 73 (1973); *Roses, Inc.* v. *United States, et al.*, 1 CIT 116, Slip Op. 81–4 (1981); *SCM Corp.* v. *United States (Brother International Corporation, Party-in-Interest)*, 82 Cust. Ct. 351, C.R.D. 79–11, 473 F. Supp. 791 (1979); *Sprague Electric Company* v. *United States (Capar Components Corp., Party-in-Interest)*, 81 Cust. Ct. 168, C.R.D. 78–18, 462 F. Supp. 966 (1978). Thus, in *Sprague* this Court commented (81 Cust. Ct., at 177):

> The ruling on defendant's motion respecting documents "a" through "g" would be apparent on the basis of what has been discussed thus far, but for one significant circumstance. The doctrine of executive privilege is not absolute, but is qualified. *Smith* v. *F.T.C.*, 403 F. Supp. at 1015; *Black* v. *Sheraton Corp. of America*, 371 F. Supp. at 100; *Kaiser Aluminum & Chemical Corp.* v. *United States*, 157 F. Supp. at 946. As stressed by the Court in *Black* (at 100):
>
>> * * * Recognition of the claim [of executive privilege] requires a *delicate balancing of competing interests*, the public's interest in preserving confidentiality to promote open communication necessary for an orderly functioning of the government, and the individual's need for disclosure of particular information. *The question at the core of any claim of executive privilege is whether the damage resulting from disclosure outweighs the need for a just resolution of a legal dispute.* [Italics supplied.]
>
> Again, in *Smith* v. *F.T.C.*, the court enunciated the concept of "balancing" as follows (403 F. Supp. at 1015):
>
>> * * * While the exact showing necessary to surmount a governmental claim of privilege is unclear [footnote omitted], what is basically involved in each case is an *ad hoc* balancing of individual need for the materials against the harm resulting from any such disclosure. * * *
>
> See also: *Nixon, supra; Sun Oil Co., supra; Union Oil Co., supra; Committee for Nuclear Responsibility, supra.*
>
> We now consider the fundamental question of whether plaintiff has demonstrated a need for the disputed documents which outweighs the harm that disclosure may do to intra-governmental candor. A "delicate balancing of competing interests," of course, cannot be accomplished so as to achieve a result having the invariance of a precise mathematical equation.

Respecting plaintiff's need for the materials sought, plaintiff argues that it cannot prepare its case without knowing the reasons for dismissal of its petition; and that "the withheld documents will presumably shed additional light on the 'other bases' for dismissal".

To date, plaintiff has received copies of 30 of the 32 documents included in the certified index of the administrative record which formed the basis of the Government's decision. Relative to the two additional documents in question, the Court's *in camera* inspection reveals that these documents contain no reasons or explanation as to why plaintiff's petition should have been or was dismissed. While this Court is completely sympathetic with plaintiff's "predicament" due to defendant's failure to give explicit reasons for the asserted injury requirement, nevertheless the disclosure of documents 8 and 12 would not aid plaintiff in knowing why its petition was dismissed. Plaintiff has not advanced any other need for the two documents.

For the foregoing reasons, it is ordered that documents numbered 8 (with attachments) and 12 contained in the administrative record previously forward to the Clerk of the Court in connection with plaintiff's countervailing duty petition regarding toy balloons and playballs from Mexico are hereby recognized as privileged documents.

Accordingly, defendant's motion for a protective order is granted.