**SCM CORPORATION, Plaintiff,**

v.

**UNITED STATES (Brother International Corporation, Party-In-Interest), Defendant.**

**C.R.D. 79–11; Court No. 77–4–00553.**

United States Customs Court.

June 11, 1979.

Frederick L. Ikenson, Washington, D. C., for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C. (David M. Cohen, Washington, D. C., Branch Director, Federal Programs Branch, Sheila N. Ziff, New York City, trial atty.), for defendant.

Tanaka, Walders & Ritger (H. William Tanaka, Lawrence R. Walders and Wesley K. Caine, Washington, D. C., of counsel), for party-in-interest.

RE, Chief Judge:

This is an American manufacturer's action brought by SCM Corporation [SCM], a domestic typewriter manufacturer, under the provisions of 19 U.S.C. § 1516(c). Plaintiff, SCM, seeks to review the failure of the Secretary of the Treasury to assess dumping duties on certain Japanese typewriters under the terms of the Antidumping Act of 1921, as amended.

■ For dumping duties to be assessed, it is necessary that the Secretary of the Treasury determine that a class or kind of imported merchandise is being, or is likely to be, sold in the United States or elsewhere at less then fair value. In addition, the International Trade Commission must determine that an industry in this country is being, or is likely to be, injured, or is prevented from being established by reason of the importation of such merchandise at less than fair value. It is only when both of these determinations are made in the affirmative, i. e., less than fair value and injury, that dumping duties may be assessed. Thus, if the Secretary finds no sales at less than fair value, or if the International Trade Commission makes a negative injury determination, no dumping finding can be published and no dumping duties can be assessed. 19 U.S.C. § 160 *et seq.* ("Antidumping Act").

The history and underlying issues of this litigation are discussed in *SCM Corporation v. United States (Brother International Corporation, Party-in-Interest)*, 450 F.Supp. 1178, 80 Cust.Ct. 226 (1978), in which this court decided that it had jurisdiction to

review the negative injury determination of the International Trade Commission.

During the course of the litigation, plaintiff, by interrogatories, sought from the defendant, among other things, all documents and things in the files of the International Trade Commission and each Commissioner in investigation number AA1921–145. In response, defendant categorized and identified all of the documents and things that it claimed were in the files of the Commission or Commissioners at the time of the negative injury determination.

Defendant did not produce the documents requested, and plaintiff sought an order compelling discovery. Defendant filed a cross-motion for a protective order, and moved to be relieved from responding to plaintiff's interrogatories and motion to produce.

The court entered an order requiring that the Secretary of the International Trade Commission prepare and transmit to the Clerk of the United States Customs Court, the following:

(1) A certified copy of the transcript of proceedings, and all exhibits introduced before the Commission in its investigation numbered AA1921–145;

(2) Certified copies of all written submissions, questionnaires, reports and other documents which relate to investigation AA1921–145;

(3) All other things in the files of the Commission relating to that investigation.

The order further provided that the denial of defendant's cross-motion for a protective order was without prejudice, and was subject to renewal for the documents or things that were received by the Commission on a confidential basis, or that were otherwise privileged. *SCM Corporation v. United States (Brother International Corporation, Party-in-Interest)*, 81 Cust.Ct. 159, C.R.D. 78–13 (1978).

In compliance with that order, copies of all documents, confidential and nonconfidential, were transmitted to the court. Based upon a claim of executive privilege asserted by the Honorable Joseph O. Parker, Chairman of the International Trade Commission, the defendant now moves for a protective order as to nine (9) documents. A formal affidavit executed by Chairman Parker was submitted and attached to defendant's brief.

When defendant, in response to plaintiff's discovery request, identified every document and thing in the files, it identified only one of the nine documents now claimed to be privileged, i. e., item No. 44, the "pros and cons" statement. Defendant contends that it has validly asserted privilege not only as to document No. 44, but also as to the other eight documents not previously identified.

The nine disputed documents listed by the defendant are described as follows:

No. 44 An undated four-page "pros and cons" statement prepared by staff for the use of the Commissioners in arriving at the Commission's determination with regard to Portable Electric Typewriters from Japan. This statement sets forth suggested criteria to be used as well as possible reasons for and against an affirmative injury determination. The document contains staff advice and alternative views and recommendations as to injury or likelihood of injury to the domestic industry;

No. 56 Twelve-page, hand-written draft of Document 44;

No. 58 An undated two-page draft opinion entitled "Statement of Reasons for Determination of Commissioner Minchew to Abstain" prepared by staff for the exclusive consideration of, and use by, Commissioner Minchew in arriving at his statement of reasons. The document contains advice, conclusions, deliberations, opinions, and recommendations;

No. 59 An undated one-page draft opinion entitled "Statement of Reasons for Abstention (sic) of Vice Chairman Minchew" prepared by staff for the exclusive consideration of, and use by, Commissioner Minchew in arriving at his statement of reasons.

The document contains advice, conclusions, deliberations, opinions, and recommendations;

No. 62 Four-page draft opinion, dated 6/16/75, entitled "Statement of Reasons for Negative Determination of Chairman ·Leonard, Commissioner Bedell," prepared by staff for the consideration of, and use by, the Commissioners in arriving at their statement of reasons. The document contains staff advice, conclusions, deliberations, opinions, and recommendations;

No. 63 Three pages of hand-written notes used as a basis for the development of Document 44. Like Documents 44 and 56, this contains staff advice and alternative views and recommendations as to injury or likelihood of injury to the domestic industry;

No. 68 An undated, four-page, second draft opinion entitled "Statement of Reasons for Negative Determination of Chairman Leonard and Commissioners Bedell and Parker" prepared by staff for the consideration of, and use by, the Commissioners in arriving at their statement of reasons, with hand-written modification made by, or at the direction, of individual Commissioners. The document contains staff advice, conclusions, deliberations, opinions, and recommendations, as well as tangible evidence of Commissioners' thought processes (in the case of hand-written modifications);

No. 77 A five-page draft opinion, dated 6/17/75, entitled "Statement of Reasons for the Affirmative Determination of Commissioner Ablondi" prepared by staff for the exclusive consideration of, and use by, Commissioner Ablondi in arriving at his statement of reasons. The document contains advice, conclusions, deliberations, opinions and recommendations;

No. 78 Five-page untitled draft opinion, dated 6/16/75, that supports an affirmative determination of injury in

Portable Electric Typewriters from Japan. This document was prepared by staff for the exclusive consideration of, and use by, Commissioner Ablondi in arriving at his statement of reasons. This document contains advice, conclusions, deliberations, opinions, and recommendations.

Plaintiff's opposition to the defendant's motion for a protective order is based upon its contention that the claim of executive privilege has been waived by defendant's conduct, and, that, in any event, it has not been properly invoked. Plaintiff also maintains that the privilege against interagency advisory opinions is not absolute but qualified.

Plaintiff states that, in response to its discovery request, defendant identified only one of the nine documents now claimed to be privileged, item No. 44, the "pros and cons" statement. At that time, this document was not produced by the defendant on the ground that it was outside the scope of judicial review in these proceedings. Consequently, it is plaintiff's contention that, since the defendant based its refusal to produce item No. 44 solely upon the scope of judicial review, the defendant has waived its claim of privilege.

The plaintiff also contends that, when asked to identify and produce, the defendant's response did not identify the eight additional documents produced after the court entered its order requiring production of all documents and things in the files of the Commission and Commissioners. Plaintiff argues that the defendant has offered no explanation for its failure to produce except that the eight documents were recently located. Also as to these documents, therefore, plaintiff contends that the defendant's conduct is tantamount to a waiver of its claim of executive privilege.

Plaintiff submits an additional reason to deny the defendant's motion for a protective order. It asserts that the claim of executive privilege must be made by the "head" of the department or agency who must personally review the matter to deter-

mine whether the privilege should be invoked, and that the Chairman of the International Trade Commission is not the appropriate official to invoke the privilege for that agency.

Finally, plaintiff urges that the privilege which attaches to interagency advisory communications does not apply "to purely factual communications within or between agencies, the disclosure of which would not compromise military or state secrets . . ."; further, that if no military or state secrets will be disclosed, even privileged materials should be disclosed "if the need for disclosure outweighs the harm that could result therefrom . . . ."

The defendant, in support of its claim of privilege, indicates that it is well-established that the government can assert an evidentiary privilege as to documents which contain intragovernmental advice, opinions and recommendations. The defendant also contends that the failure to pursue a timely valid claim of privilege should not be consider a waiver. Although the defendant states that it erred not to have specifically claimed privilege as to item No. 44, that fact should not prevent the court from granting its motion.

If its claim of executive privilege is not sustained, as alternative relief, the defendant requests a certification by the court that the denial of its motion presents a controlling question of law which justifies an immediate appeal to the Court of Customs and Patent Appeals under 28 U.S.C. § 1541(b).

The court must initially examine plaintiff's contention that the defendant has waived the privilege. In addition to denying any waiver, the defendant urges that the public interest in protecting government privileged materials far outweighs the deficiencies in asserting the claim.

■■■ As to item No. 44, it is sufficient to note that the defendant initially refused to produce the document on the ground that it was outside the scope of discovery. A valid objection that has been asserted should not foreclose additional grounds for objection in subsequent proceedings. Since executive privilege exists to aid the governmental decisionmaking process, a waiver should not be lightly inferred. Surely, a waiver cannot be implied on the facts before the court.

■■■ As for the eight documents not identified upon the discovery request, and now claimed to be privileged, the opportunity to raise the claim of executive privilege should be permitted if it is required by the public interest. In the motion to compel discovery, the defendant has invoked the claim of executive privilege as to all documents. The cases teach that this was a proper method for the invocation of the privilege. See *Armstrong Bros. Tool Co. et al. v. United States (Great Neck Saw Manufacturing, Inc., Party-in-Interest)*, 463 F.Supp. 1316, 82 Cust.Ct. —— (1979).

■■■ On the question whether the claim has been properly invoked by Chairman Parker, the court notes that it has been held that the Chairman of the International Trade Commission holds a position of high authority, and is authorized to examine documents with the expertise to exercise a proper claim of privilege. *Sprague Electric Company v. United States (Capar Components Corp., Party-in-Interest)*, 462 F.Supp. 966, 81 Cust.Ct. 168 (1978). Quoting from *Smith v. Federal Trade Commission*, 403 F.Supp. 1000, 1016 (D.Del.1975), which examined the role of the Chairman of the Federal Trade Commission, Judge Newman, in *Sprague* stated:

" . . . Chairman Parker is . . . 'someone in a position of high authority [who] could examine the materials involved from a vantage point involving both expertise and an overview-type perspective.' Plainly, then, the rationale adopted by the Court in *Smith* concerning the Chairman of the FTC is fully applicable here to the Chairman of the ITC. Within the doctrine of *United States v. Reynolds*, 345 U.S. 1, 7–8, 73 S.Ct. 528, 97 L.Ed. 727 (1953), the Chairman of the ITC is clearly the 'head' of the Commission for purposes of asserting a claim of executive

privilege, and such claim was properly made by him in this case on behalf of the Commission. See also *Kerr v. United States District Court,* 511 F.2d 192, 198 (9th Cir. 1975) (by implication), *aff'd,* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976)." 462 F.Supp. at 969.

In the action presently before the court, there has been full compliance with the established criteria: the privilege has been formally claimed; it has been asserted by the head of the agency having control over the matter, the Chairman of the International Trade Commission, who personally considered the matter; the materials have been reviewed; and an appropriate affidavit has been submitted in support of the claim of privilege. On the circumstances presented, plaintiff's contention that the claim has not been properly invoked is without merit.

 Although it is said that discovery rules apply to the United States "just as fully as they apply to any other person," one of the privileges against discovery, unique to the United States as a sovereign, is that of "executive privilege." See Wright & Miller, *Federal Practice and Procedure: Civil* § 2019 (1970). The doctrine of executive privilege permits the executive branch to withhold disclosure of intragovernmental documents which contain advisory opinions, recommendations and deliberations in the formulation of governmental policies and decisions. *National Courier Association v. Board of Governors of the Federal Reserve System,* 170 U.S.App.D.C. 301, 313–314, 516 F.2d 1229, 1241–42 (1975); *Smith v. Federal Trade Commission,* 403 F.Supp. 1000, 1014 *et seq.* (D.Del.1975); and *Verrazzano Trading Corp. v. United States,* 70 Cust.Ct. 347, 350, C.R.D. 73–9 (1973).

 The privilege exists to encourage uninhibited and frank internal discussion in the formulation of governmental policy and decisionmaking. In the words of Mr. Chief Justice Burger, the privilege is necessary because "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process." *United States v. Nixon,* 418 U.S. 683, 705, 94 S.Ct. 3090, 3106, 41 L.Ed.2d 1039 (1974). See also *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).

 Except in cases of military or state secrets, executive privilege is not absolute, and the courts must determine whether the facts justify sustaining the claim of privilege. See *United States v. Reynolds,* 345 U.S. 1, 11, 73 S.Ct. 528, 97 L.Ed. 727 (1953); Wright & Miller, *Federal Practice and Procedure: Civil* § 2019 (1970). For example, the courts have permitted the disclosure of purely factual communications which would not compromise military or state secrets. *Environmental Protection Agency v. Mink,* 410 U.S. 73, 87–88, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). Indeed, in all cases the courts must weigh the need for the materials sought against the potential harm that would result from their disclosure. See *United States v. Nixon,* 418 U.S. 683, 711–12, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Black v. Sheraton Corporation of America,* 371 F.Supp. 97, 100 (D.D.C.1974); *Smith v. Federal Trade Commission,* 403 F.Supp. 1000, 1015, (D.C.Del.1975).

 In weighing the conflicting interests to determine whether the documents should be protected from disclosure, a specific need must be demonstrated for the materials sought. Upon this basis, the importance of the materials to the lawsuit is weighed against the governmental policy to protect the confidentiality of executive communications. *United States v. Nixon,* 418 U.S. 683, 705, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). For example, in *Sun Oil Company v. United States,* 514 F.2d 1020, 206 Ct.Cl. 742 (1975), the petitioner alleged that its application for an offshore oil platform had been denied by the United States for improper political reasons. The court ordered an *in camera* inspection of Presidential documents so that it might weigh the conflicting interests between plaintiff's need for the evidence and the government's requirement of secrecy.

On the other hand, in the *Sprague* case, which dealt with a document similar to item

No. 44 in the present case, the court observed:

"The draft opinions and 'pros and cons' statements sought by plaintiff (documents 'a' through 'g' in exhibit A) comprise essentially intra-agency advisory opinions and recommendations by the Commission's staff, and were an integral part of the Commission's deliberative process. Thus, these opinions and statements fit squarely within the concept of executive privilege as enunciated in the above-cited cases. In the process of making injury determinations and other decisions within the scope of its authority, it is undoubtedly in the public interest that the Commission and its staff must necessarily feel free to explore various alternatives on a confidential basis. [Footnotes omitted.]" 462 F.Supp. at 973.

While documents which contain only factual material may be discovered, it has been observed that:

"Free discovery of opinions based on those facts might cause undue reticence by the investigating officer, and prevent fulfillment of the purposes of the investigation. . . ." *Reliable Transfer Co. v. United States*, 53 F.R.D. 24, 25 (E.D.N.Y.1971).

Although the legal principle is clear, because of the difficulty in some cases in distinguishing between fact and opinion, its application is not always free from doubt. *Environmental Protection Agency v. Mink*, 410 U.S. 73, 86, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). In this case, plaintiff has made no request for a severance of any facts from the deliberative or other contents of the documents in issue.

■■■■ The privilege accorded intragovernmental memoranda reflects the public policy that preliminary discussions and deliberations require confidentiality for a candid consideration of alternative courses of conduct. *Grumman Aircraft Eng. Corp. v. Renegotiation Board*, 157 U.S.App.D.C. 121, 129, 482 F.2d 710, 718 (1973). This aspect of the privilege is analogous to the fifth exemption in the *Freedom of Information Act* which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Indeed, the public interest in fostering candid discussion among governmental personnel may be deemed to take precedence over a litigant's interest in discovering matter essential to presenting a case. See *Kaiser Aluminum & Chemical Corp. v. United States*, 157 F.Supp. 939, 947, 141 Ct.Cl. 38 (1958).

■■■■ In the present case, plaintiff has not demonstrated a clear and persuasive need for the documents in question. In weighing the opposing interests, between the need to produce the documents and the public policy which prevents their disclosure, no compelling reasons have been offered by the plaintiff which would justify producing the "pros and cons" statement as well as the other documents. Plaintiff has not demonstrated what it expects to learn from the disputed materials, nor has it offered sufficient reasons to warrant the production of documents which admittedly contain deliberative matter. *Kaiser Aluminum & Chemical Corp. v. United States*, 157 F.Supp. at 947–48.

Plaintiff urges that an *in camera* inspection by the court of the Commission's staff's "pros and cons" statement and draft opinions "may help focus on those facts or documents in the record thought [by the Commission's staff] to be most significant." To follow the suggestion would violate the policy which protects probing the mental processes of public officials who must evaluate the frank expression of opinion of those who must advise and set forth the advantages and disadvantages of a proposed decision. *Environmental Protection Agency v. Mink*, 410 U.S. 73, 92, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *Morgan v. United States*, 304 U.S. 1, 18, 58 S.Ct. 773, 82 L.Ed. 1129 (1938). See also discussion in Schwartz, *Administrative Law* 385–92 (1976).

The materials sought, as described in the sworn affidavit and descriptive summary,

contain recommendations of two opposite courses of action, viz., on the one hand, a recommendation for an affirmative injury determination, and, on the other, a recommendation for a negative injury determination. Clearly, these documents, containing opinions, deliberations, advice and recommendations, show an evaluation by those who must advise on the advantages and disadvantages of a proposed policy decision.

On the question of an *in camera* inspection, the following statement from the decision of this court in *Armstrong Bros. Tool Co. et al. v. United States (Great Neck Saw Manufacturing Inc., Party-in-Interest)*, 463 F.Supp. 1316, 82 Cust.Ct. —— (1979) is pertinent:

"In certain cases where courts have utilized the 'in camera' procedure for determining claims of executive privilege, 'it appeared, before the inspection was ordered, that the claimant was entitled to some amount of discovery', and it was necessary to separate the privileged and unprivileged materials. [Citations omitted.]" 463 F.Supp. 1320.

■ Thus, where the circumstances demonstrate that factual materials are a part of advisory memoranda, and are severable, an *in camera* inspection may determine which materials should be disclosed. In this case, the Chairman of the International Trade Commission has submitted an affidavit, attached to a description of the materials, which specifically declares that the claimed documents consist of advisory opinions, conclusions, considerations, deliberations, advice and recommendations prepared by members of the Commission's staff. The accuracy and veracity of the contents of the materials presented are not questioned. From the description of the materials, and the Chairman's affidavit, it does not appear that an *in camera* inspection is warranted. Hence, the claim of privilege is sustained.

■ In summary, the Chairman of the International Trade Commission, in claiming privilege and resisting disclosure, by his affidavit and the description of the materials, has demonstrated to the court that the documents in question are advisory, and contain no severable factual information. The documents in question, representing "pure deliberative processes of government," are protected against disclosure. *Weir v. United States*, 508 F.2d 894 (2d Cir. 1974).

For the foregoing reasons, based upon all of the papers and proceedings had, it is hereby

ORDERED, ADJUDGED AND DECREED that defendant's motion for a protective order is granted, and that a claim of privilege has been found to have been correctly made for the documents described in the attached exhibit A, and, it is further

ORDERED, ADJUDGED AND DECREED that the Clerk of the Court shall seal the documents listed in the attached exhibit A and keep them sealed pending any further order by the court.

In view of the foregoing, the defendant's request to file an immediate appeal pursuant to 28 U.S.C. § 1541(b) is moot.

EXHIBIT A

LIST OF DOCUMENTS INVOLVED IN INVESTIGATION AA1921–145
WITH REGARD TO PORTABLE ELECTRIC TYPEWRITERS FROM
JAPAN AS TO WHICH PRIVILEGE IS INVOKED

| Document * | Description |
| --- | --- |
| 44 | An undated four-page "pros and cons" statement prepared by staff for the use of the Commissioners in arriving at the Commission's determination with regard to Portable Electric Typewriters from |

\* These numbers correspond to those in the "List of Documents and Things in the Files of the U.S. International Trade Commission which Relate to ITC Investigation No. AA1921–145 (Portable Electric Typewriters from Japan)."

Japan. This statement sets forth suggested criteria to be used as well as possible reasons for and against an affirmative injury determination. The document contains staff advice and alternative views and recommendations as to injury or likelihood of injury to the domestic industry.

56 Twelve-page, hand-written draft of Document 44.

58 An undated two-page draft opinion entitled "Statement of Reasons for Determination of Commissioner Minchew to Abstain" prepared by staff for the exclusive consideration of, and use by, Commissioner Minchew in arriving at his statement of reasons. The document contains advice, conclusions, deliberations, opinions, and recommendations.

59 An undated one-page draft opinion entitled "Statement of Reasons for Abstension (sic) of Vice Chairman Minchew" prepared by staff for the exclusive consideration of, and use by, Commissioner Minchew in arriving at his statement of reasons. The document contains advice, conclusions, deliberations, opinions, and recommendations.

62 Four-page draft opinion, dated 6/16/75, entitled "Statement of Reasons for Negative Determination of Chairman Leonard, Commissioner Bedell," prepared by staff for the consideration of, and use by, the Commissioners in arriving at their statement of reasons. The document contains staff advice, conclusions, deliberations, opinions, and recommendations.

63 Three pages of handwritten notes used as a basis for the development of Document 44. Like Documents 44 and 56, this contains staff advice and alternative views and recommendations as to injury or likelihood of injury to the domestic industry.

68 An undated, four-page, second draft opinion entitled "Statement of Reasons for Negative Determination of Chairman Leonard and Commissioners Bedell and Parker" prepared by staff for the consideration of, and use by, the Commissioners in arriving at their statement of reasons, with hand-written modification made by, or at the direction, of individual Commissioners. The document contains staff advice, conclusions, deliberations, opinions, and recommendations, as well as tangible evidence of Commissioners' thought processes (in the case of hand-written modifications).

77 A five-page draft opinion, dated 6/17/75, entitled "Statement of Reasons for the Affirmative Determination of Commissioner Ablondi" prepared by staff for the exclusive consideration of, and use by, Commissioner Ablondi in arriving at his statement of reasons. The document contains advice, conclusions, deliberations, opinions and recommendations.

78 Five-page untitled draft opinion, dated 6/16/75, that supports an affirmative determination of injury in Portable Electric Typewriters from Japan. This document was prepared by staff for the exclusive consideration of, and use by, Commissioner Ablondi in arriving at his statement of reasons. This document contains advice, conclusions, deliberations, opinions, and recommendations.