**MOBIL OIL CORPORATION, Plaintiff,**

v.

**DEPARTMENT OF ENERGY and James B. Edwards, Secretary, Defendants.**

No. 81–CV–340.

United States District Court, N.D. New York.

April 18, 1983.

On Motion for Reconsideration Sept. 2, 1983.

Bond, Schoeneck & King, Syracuse, N.Y., Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., Mobil Oil Corporation, Fairfax, Va., for plaintiff; Thomas E. Myers, Syracuse, N.Y., R. Bruce McLean, Daniel Joseph, Harry R. Silver, Joseph T. Casey, Jr., David A. Holzworth, Washington, D.C., William C. Streets, Gail F. Schulz, Charles S. Lindberg, Fairfax, Va., of counsel.

Frederick J. Scullin, Jr., U.S. Atty., Northern District of New York, Syracuse, N.Y., Department of Energy, Office of General Counsel, Regulatory Litigation Division, Washington, D.C., for defendants; Paula Ryan Conan, Asst. U.S. Atty., Syracuse, N.Y., Thomas H. Kemp, Samuel Sooper, Marcia K. Sowles, Linda Samuel, Washington, D.C., of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

Presently before the Court is a motion by plaintiff, Mobil Oil Corporation (Mobil), to compel defendants, the Department of Energy, et al. (DOE), to produce twenty-two documents: P–1 and P–3 through P–23.

**4**

The defendants have refused to disclose the documents, asserting the predecisional privilege with regard to each of the documents; the attorney-client privilege with regard to P-3, P-5, P-11 and P-22; and the work product privilege with regard to P-5, P-10, P-12, P-17, a portion of P-18, and P-19. The Court has carefully considered the memorandum of law submitted by each side and has reviewed certain documents *in camera*. For the reasons stated herein the Court concludes that DOE's predecisional privilege claims fail on procedural grounds and are denied except as to P-12; DOE's attorney-client privilege claim applies to P-11 and is denied as to all other documents; and DOE's work product privilege claim applies to P-12, a portion of P-19, and P-17.

## PREDECISIONAL PRIVILEGE

▮ The predecisional privilege,[1] a "subcategory of the executive or govern-

1. A DOE index attached to each document provides the following information:

| Document | Description | Author–Addressee |
|---|---|---|
| P-1 | 24 pages of memo dated 4/13/78 "Enforcement Analysis of Fluctuating Old Oil Problem" | Office of Enforcement – |
| P-3 | 1 page cover and 10 page memo dated 6/4/81 "Impact of the Tertiary Incentive Program on the Entitlements Program" | F. Scott Bush, Acting Director Office of Program Operations – Bill Funk, Ben McRae Office of General Counsel |
| P-4 | 2 page memo dated 5/18/81 re: Tertiary Incentive Revenue and Entitlements Impact; 2 pgs. tables | Eugene D. Glass, Program Manager Tertiary Enhanced Recovery Program – F. Scott Bush, Acting Dir. Office of Program Operations |
| P-5 | 1 page cover memo and 59 page study & appendices dated 9/18/81 re: disappearing old oil issue | T. Wendell Butler, Asst. Administrator ERA – R. Tenney Johnson, General Counsel |
| P-6 | 20 pages of memo dated 6/81 "Summary of Comments on Proposed Rulemaking" Tertiary Incentive Program Docket No. ERA-R-81-04 | Douglas H. Harnish, Jr., Crude Oil Regulations Petroleum Analysis Div. ERA – |
| P-7 | 2 page special report dated 11/10/81 for items reported on Form 424-B, The Producers Report | Douglas H. Harnish, Jr., Crude Oil Regulations Petroleum Analysis Div. ERA – William Funk, Asst. General Counsel Regulatory Oversight |
| P-8 | 2 page memo dated 12/7/81 attaching and updating P-7 plus 2 pages of summaries of Tertiary Incentive Program data | Douglas H. Harnish, Jr. – William Funk (see above) |
| P-9 | 13 page analysis of Tertiary Incentive Program dated 10/81 | Douglas H. Harnish, Jr. (see above) – |
| P-10 | 17 pages of report "The Effect of the Tertiary Incentive Program on the Entitlements Program" dated 10/27/81 | Ben McRae, Attorney Advisor, Office of General Counsel – |
| P-11 | 1 page response to portions of P-19 dated 11/17/81 | F. Scott Bush, Acting Administrator, ERA – William Funk, Assistant General Counsel Regulatory Oversight |
| P-12 | 2 page memo dated 11/16/81 with handwritten comments in response to P-19 | F. Scott Bush – William Funk (see above) |
| P-13 | 17 page memo dated 9/11/81 "The Effect of the Tertiary Incentive Program on the Entitlements Program" | Ben McRae (see P-10) – |
| P-14 | 17 page "Analysis of the Tertiary Incentive Program" dated 8/81 | Douglas H. Harnish, Jr. & Eugene Glass, Petroleum Div., ERA – |
| P-15 | 29 page report and cover memo dated 12/22/81 re: decline of controlled crude oil | Daniel J. Thomas, Office of Fuels Program ERA – F. Scott Bush, Dir. Oil and Gas Imports Div. |
| P-16 | 4 page memo dated 11/20/81 re: decline of deemed old oil after 10/80 | Daniel J. Thomas – F. Scott Bush (see above) |
| P-17 | cover and 16 page memo dated 8/19/81 "Impact of the Tertiary Incentive Program on the Entitlements Program" | William Funk (see P-11) – Allen Weeks, Gene Glass, Douglas Harnish, F. Scott Bush & Peter Antonelli |
| P-18 | 17 page report dated 12/81 "The Effect of the Tertiary Incentive Program on the Entitlements Program" | Ben McRae – |
| | 14 page report dated 10/81 "Analysis of the Tertiary Incentive Program" | Douglas H. Harnish, Jr. – |

mental privilege," *Mobil Oil Corp. v. Department of Energy*, 520 F.Supp. 414, 416 (N.D.N.Y.1981), *rev'd on other grounds*, 659 F.2d 150 (TECA), *cert. denied*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981) (citing *N.L.R.B. v. Sears, Roebuck, & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975), protects from disclosure those agency documents which reflect "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Id.* The purpose of the privilege is to encourage frank discussion of ideas and policies, thereby ensuring the quality of governmental decision making. *Id.* The privilege is to be narrowly construed. *Mobil Oil Corp., Exxon Corp., Gulf Oil Corp., and Marathon Oil Co. v. The Department of Energy, and James B. Edwards, Secretary of Energy*, 79–CV–11 (N.D.N.Y. April 2, 1982) (Munson, C.J.) (Order).

 To support its privilege claim, an agency must establish that: "1) the materials were part of a deliberative process by which policies or decisions are formulated . . ., and 2) that the materials were truly of a predecisional, or advisory or recommendatory nature, or expressed an opinion on a legal or policy matter, or otherwise were reflective of a deliberative process." *Id.* (citations omitted). "Working law communications," *i.e.*, those explanations or interpretations of an existing decision, are not within the protection of the privilege; nor does the privilege extend to purely factual material or factual data which may be severed from a deliberative memorandum or report. *Id.*

 Once the privilege is properly invoked and the court determines that the material falls within the predecisional privilege, the court must engage in a balancing test to determine whether to compel release of the information.[2] Factors to be considered in this balancing test are:

(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues involved; (iv) the role of government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Mobil Oil Corp. v. Department of Energy*, 520 F.Supp. at 417 (citations omitted).

 The government has the burden of properly invoking the privilege. After an exhaustive study of the case law, this Court, in *Mobil Oil Corp. v. Department of Energy, id.* at 416, outlined the specific procedure to be followed:

*First*, the claim of the privilege must be lodged by the head of the agency which has control over the matter, after personal consideration of the allegedly privileged nature of the information. This power to claim the privilege may be delegated by the head of the agency, but only to a subordinate with high authority. Nevertheless, before this properly may be done, the head of the agency

| Document | Description | Author–Addressee |
|---|---|---|
| P-19 | 54 page memo dated 11/81 re: Entitlements Program | William Funk (see P–11) – |
| P-20 | 3 pages of handwritten notes dated 6/81 re: tertiary revenue | William Funk (see P–11) – |
| P-21 | 2 pages of handwritten revised computations dated 7/81 | William Funk (see P–11) – |
| P-22 | 19 page memo "Impact of the Tertiary Incentive Program on the Entitlements Program" dated 6/81 | Eugene Glass, Program Manager, Tertiary Enhanced Recovery Program – |

| Document | Description | Author–Addressee |
|---|---|---|
| P-23 | 1 page memo and 3 pages of charts dated 3/13/79 re: summary of P-124 data | Chuck Little – John Murray |

2. "[T]hough the deliberative process in governmental decision-making merits protection, against this consideration must be balanced the interest of the private litigant, the need for accurate judicial fact-finding, and even the public interest in learning how effectively the government is operating." *Mobil Oil Corp. v. Department of Energy*, 520 F.Supp. 414, 417 (N.D.N.Y. 1981), *rev'd on other grounds*, 659 F.2d 150 (TECA), *cert. denied*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981) (citing *In re Franklin*

must issue guidelines on the use of the privilege. These requirements are designed to guarantee both that the delegatee official has sufficient expertise in the agency's operations and functions, and will be able to render decisions on privileged information after reasoned judgment. The *second* procedural requirement is that a claim of privilege must specifically designate and describe the information that is purportedly privileged. And *third,* the agency must provide "precise and certain" reasons for preserving the confidentiality of the requested information.

(citations omitted) (emphasis added).

■ In the instant case,[3] DOE fails to meet the strict procedural requirements. First, the privilege has been invoked by a DOE staff attorney and not by the agency's head or a "subordinate with high authority." Relying upon *United States Department of Energy v. Brett,* 659 F.2d 154 (TECA 1981) and *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), DOE argues that if the agency submits a specific and detailed justification of its claims and is willing to submit the documents to the Court for *in camera* inspection, then an affidavit or testimony of the agency head or high official is not mandated. DOE submits only an unsworn index

of documents and seeks *in camera* inspection by the Court. This Court has already respectfully declined to follow *Brett*'s holding that no affidavit is needed if the agency seeks *in camera* review:

> Followed literally, [*Brett*] forces courts to become mindreaders—to discern without guidance what privilege claims an agency is asserting, the reasons for those claims, and then using those assumptions to determine whether the documents may be justifiably withheld. Moreover, in arcane areas of the law, judges may well fail to understand the precise content or import of highly technical documents without affidavits. Without such assistance, the chances of erroneous determinations increase.

*Mobil Oil Corp. v. Department of Energy and James B. Edwards, Secretary,* 81–CV–340 (N.D.N.Y. June 11, 1982) (Munson, C.J.) (Order). The Court's June 11, 1982 Order stated that *Brett*'s reliance on *Vaughn* is misplaced. The Court reiterates that while *Vaughn* did not specifically require agencies to submit affidavits, "[t]he whole thrust of the decision . . . was to require more stringent, not fewer, procedures for asserting a claim of privilege." *Id.*

This Court has also previously addressed the problems involved with *in camera* review.[4] Noting that *in camera* inspection is

---

*National Bank Securities Lit.,* 478 F.Supp. 577, 582 (E.D.N.Y.1979).

**3.** Mobil makes three arguments to counter DOE's predecisional privilege claim. First, Mobil argues that DOE has failed to meet strict procedural requirements for invoking the privilege because the proper agency head did not assert the privilege, DOE did not adequately describe the withheld documents, and DOE offered only token conclusions to support its privilege claim. Second, Mobil contends that, even assuming that DOE has complied with the procedural requirements, its predecisional claim is without merit because the documents are not deliberative in function, but rather are purely factual reports or memoranda. Third, Mobil argues that even if the documents do fall within the ambit of the predecisional privilege and proper procedures have been met, discovery should be compelled because Mobil and this Court's need for the information outweighs DOE's interest in nondisclosure.

**4.** *In camera* inspection is not, nor should it be, automatic. The *Vaughn* court cautioned against the overuse of *in camera* inspection, pointing out the problems for both the court and the litigants:

> Such an examination, however, may be very burdensome, and is necessarily conducted without the benefit of criticism and illumination by a party with the actual interest in forcing disclosure. In theory, it is possible that a trial court could examine a document in sufficient depth to test the accuracy of a government characterization, particularly where the information is extensive. But where the documents in issue constitute hundreds or even thousands of pages, it is unreasonable to expect a trial judge to do as thorough a job of illumination and characterization as would a party interested in the case.

*Vaughn v. Rosen,* 484 F.2d at 825.

not "necessarily wise," this Court has concluded that "[a]s in other facets of life, moderation is best." *Id.* Furthermore, this Court has concluded that the *Brett* rule only increases the "innate impetus that encourages agencies automatically to claim the broadest possible grounds for exemption for the greatest amount of information." *Id.* (Quoting *Vaughn*, 484 F.2d at 826). The result is that "inefficiency prevails over justice." *Id.*

DOE's failure to comply with the first procedural requirement that the agency's head or a high level subordinate assert the claim is fatal to its predecisional privilege claim. Contrary to *Vaughn*'s intent to place stricter controls on agency privilege claims, DOE seeks a rule which would shift the burden of proving the necessity of such claims away from the agency and on to the already heavily burdened court system. The courts would be forced to review privilege claims by any agency staff member solely because the agency member was willing to submit the withheld documents for *in camera* inspection. There would be no incentive to the agency to deter frivolous claims of privilege. Any agency staff member would routinely claim the privilege and, even more problematic, would routinely expect the court to review the documents *in camera.*

The second procedural requirement is that a predecisional claim must "specifically designate and describe the information that is purportedly privileged." *Mobil Oil,* *supra,* 81–CV–340 (N.D.N.Y. June 11, 1982). DOE's "Index of Defendant's Privileged Documents" states for each document the author, addressee, date, subject, privilege claimed, and justification for the privilege. Under the heading "subject" is a brief description of the withheld document. DOE asserts that this index provides an adequate description of the

withheld documents and that any more detailed description would act to waive the privilege by nullifying the effect of withholding the document. DOE argues that an index comparable to the one submitted here was described as a "detailed index" by the Temporary Emergency Court of Appeals in *Department of Energy v. Crocker,* 629 F.2d 1341, 1343 (TECA 1980) (vacating *Berry Holding Company, et al. v. Department of Energy, et al.,* CV–78–149 MDC (E.D.Cal. Dec. 3, 1979)). DOE further argues that a comparable index was found to be sufficient in *SCM Corp. v. United States,* 473 F.Supp. 791 (Cust.Ct.1979).

This Court has examined the index submitted in each of the cases cited by DOE. The Court concludes that neither of the indices standing alone would provide ample information to allow a court to determine whether the documents are of a predecisional, advisory nature and whether the documents contain analytical as opposed to severable factual information. However, the Court must note that the index in each of the cases cited was appropriately accompanied by a sworn affidavit, by the Chairman of the International Trade Commission in *SCM Corp. v. United States,* and by an official of the Economic Regulatory Administration of the DOE in *Department of Energy v. Crocker.*

The court in *SCM,* 473 F.Supp. at 796, noted that the ITC Chairman "holds a position of high authority, and is authorized to examine documents with the expertise to exercise a proper claim of privilege." The *SCM* court relied heavily upon the contents and import of the Chairman's affidavit which "specifically declare[d] that the claimed documents consist of advisory opinions, conclusions, consideration, deliberations, advice and recommendations prepared by members of the Commission's staff.[5] The accuracy and veracity of the contents

---

5. The *SCM* court, 473 F.Supp. at 799, in upholding the defendant's privilege claim, stated that:

> The materials sought, as described in the sworn affidavit and descriptive summary, contain recommendations of two opposite courses of action, viz., on the one hand, a recommendation for an affirmative injury de-

termination, and, on the other hand, a recommendation for a negative injury determination. Clearly, these documents, containing opinions, deliberations, advice and recommendations, show an evaluation by those who must advise on the advantages and disadvantages of a proposed policy decision.

of the materials presented are not questioned. From the description of the materials, and the Chairman's affidavit, it does not appear that an *in camera* inspection is warranted." *Id.* at 799.

In the instant case, the DOE provides a scant, uninformative description of each of the documents. For example, the index entry for P–1, under the "subject" heading provides the number of pages and the title and states only that the document "identifies potential causes for the fluctuations of old oil and reports on audit programs designed to detect these causes." Under the "justification" heading DOE provides only slightly more information, stating that:

> [p]ortions of this document set forth agency personnel's preliminary thoughts and analysis regarding the causes for some of the reported migration and 'disappearance' of old oil. That analysis is part of the deliberative process prepared prior to a final decision being reached by the agency with respect to recommended actions for tracking volumes of old oil through exchange transaction.

This index entry alone does not adequately inform the Court of the advisory or recommendatory nature of P–1. There is no indication to the Court as to whether the document is purely analytical or contains severable factual information. *See Mead Data Central, Inc. v. United States Department of the Air Force*, 566 F.2d 242, 260–61 (D.C.Cir.1977) (FOIA case in which agency had burden of (1) showing there was no reasonably segregable factual ma-

terial within the withheld document and (2) providing detailed justification why non-exempt material is not segregable). Perhaps a sworn affidavit by DOE's head or a high level official, combined with the index, would provide this Court with the same degree of specificity available to the *SCM* court. Under the circumstances, however, this Court cannot find that DOE has specifically designated and described the purportedly privileged information. Thus, DOE fails to meet the second procedural requirement for invoking the predecisional privilege.

DOE also fails to satisfy the third procedural requirement that the agency provide "precise and certain" reasons for preserving the confidentiality of the information. Here, DOE's justifications asserted for withholding the documents are conclusory and provide this Court with little or no basis upon which to determine that the documents are privileged. *See Biliske v. American Livestock Insurance Company*, 73 F.R.D. 124 (W.D.Okl.1977) (Bald assertions of privilege insufficient; some fact must be alleged to establish the existence of the privilege). In this regard, the index entry for P–1 states only that "[d]isclosure of portions of this document would hamper the intra-agency exchange of information and ideas." The index is devoid of any explanations as to whether the confidentiality of any or all of P–1 has been preserved to date and as to the need for continued confidentiality of that document.[6] DOE has failed to properly invoke the predeci-

---

**6.** Many of the documents contain charts, graphs, and other material which may include segregable factual data. The DOE index does not specifically designate and describe this material. *E.g.* P–4 (tables comparing tertiary oil in terms of Tertiary Program and Entitlements Program data); P–7 (aggregate computations based on filings of Form 424–B, the Producers Report); P–9 ("historical" information regarding the impact of the Tertiary Incentive Program); P–10 through P–13 (numerous charts and graphs); P–16 (computations of cumulative change in deemed old oil); P–20 (preliminary computations of tertiary and deemed old oil); P–21 (handwritten revisions of certain computations); P–23 (three pages of charts summarizing First Purchasers Report Form data). The index fails to state whether the confidentiality of cer-

tain documents has been maintained. *E.g.* P–16 and P–20.

The justification asserted for each document repeats certain conclusory, uninformative language. *See e.g.* P–4 ("the intra-agency memorandum is part of the deliberative process prepared prior to a final decision being reached by the agency with respect to accounting for the decline in controlled oil volume" and "represents preliminary findings that were subject to further review and concurrence"; "release would reveal the analysis and opinions of agency personnel prior to a final decision ..."; "[d]isclosure would also hamper the intra-agency exchange of information and ideas"). *See also* P–3 and P–5 through P–23 (similar language repeated).

sional privilege and to show its applicability to the documents P–1 and P–3 through P–23.

## ATTORNEY–CLIENT PRIVILEGE

■ The Supreme Court has recognized the attorney-client privilege as "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). The privilege protects "not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390, 101 S.Ct. at 683. "Its purpose is to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such public advice or advocacy depends upon the lawyer being fully informed by the client." *Id.* at 389, 101 S.Ct. at 682.

■ The attorney-client privilege applies if:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers, (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Colton v. United States*, 306 F.2d 633, 637 (2d Cir.1962) (quoting *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–359 (D.Mass.1950)). The party asserting the privilege bears the burden of proving that the privilege applies, *Gulf Oil Corp. v. Schlesinger*, 465 F.Supp. 913, 916 (E.D.Pa.1979), and that the communication has remained confidential. *United States v. Silverman*, 430 F.2d 106, 121–122 (2d Cir.1970).

DOE claims the attorney-client privilege with regard to P–3, P–5, P–11 and P–22. The Court has reviewed the documents *in camera*, and concludes that the privilege does not protect P–3, P–5, or P–22 and does protect P–11.

■ P–3, according to the index, draws tentative conclusions concerning the impact of the Tertiary Incentives Program on the Entitlements Program, and "reveals information provided in confidence to agency counsel by an official of the client agency which confidentiality has been maintained." DOE argues that the memoranda concern issues raised in legal proceedings including Mobil's petition for rulemaking and its complaint in this action, *i.e.*, the alleged disappearing old oil problem and the impact of the Tertiary Program. However, neither the index entry nor the document itself makes clear whether the communication relates to a fact of which the attorney was informed for the purpose of securing *primarily* either an opinion of law or legal services or assistance in some legal proceeding. Furthermore, Mobil's argument that it is not clear whether William Funk and Ben McRae were acting as "attorneys" in *receiving* this document is well taken.[7] Although Funk was a high ranking official in the General Counsel's office, the document addresses regulatory-related matters, and it is not clear whether the addressees Funk and McRae were acting in their capacities as attorney advisors or as regulatory decision-makers. The document does

7. Mobil contends that the agency counsel, Mr. Funk and Mr. Johnson, serve dual roles as regulators and attorneys, and that DOE has failed to show that the agency counsel were acting in their role as attorneys in connection with the communications at issue. Mobil argues that in each case the DOE's failure to assert that the communication was made in connection with seeking legal advice is fatal to its privilege claim.

not come within the attorney-client privilege merely by being forwarded to or routed through the counsel's office.

■ P–5 was compiled by T. Wendell Butler, Assistant Administrator, ERA and includes a number of appendices. The index states that P–5 was prepared at the request of Tenney Johnson, the General Counsel, for information on the alleged problem of disappearing old oil; however, there is no indication, in the index or the document that the information was communicated for the purposes of *primarily* securing legal advice or a legal opinion, services or assistance. The document does not fall within the attorney-client protection.

■ P–11 falls within the protection of the attorney-client privilege and, therefore, need not be disclosed. P–11, a one page memorandum by F. Scott Bush, Acting Administrator ERA addressed to William Funk, Assistant General Counsel, must be read in conjunction with P–19. P–11 states Bush's comments with regard to P–19 which was prepared by Funk and which discusses legal interpretations and theories relating to the problems raised by the January and Clean-Up Lists. P–19 specifically discusses the current litigation in the *Mobil Oil* case and the *Union Oil* case. P–11 is a confidential communication to the DOE General Counsel made for the purpose of aiding in the pending litigation; Bush is acting in his capacity as within the client agency; and Funk is acting in his role as General Counsel rendering legal assistance with regard to the current litigation.

■ P–22 is a nineteen page memorandum entitled "Impact of the Tertiary Incentive Program on the Entitlements Program", plus nine pages of tables and graphs. The index states that P–22 "reveals information provided in confidence to agency counsel by an employee of the client agency which confidentiality has been maintained." The document is written by Glass and there is no addressee stated. It is thus impossible to determine to whom the document was sent, for whom it was prepared and for what purpose it was prepared.

The first page of P–22 states that the "[f]ollowing tables and graphs are used to analyze the financial impact of the Tertiary Program through April 1981 and to make estimates of the impact of the Tertiary Incentive Program on the Entitlements Program." It is not clear whether the document was simply routed through agency counsel. Nor is it clear that, in connection with the communication, the counsel is acting in his capacity as a lawyer and not in a regulatory or administrative capacity. *See Gulf Oil Corp. v. Schlesinger*, 465 F.Supp. at 917 (General Counsel of the Cost of Living Council held dual title and served dual roles as attorney and energy policy maker; his duties include formulating and interpreting public regulations). Further, it is impossible to determine whether the communication relates to a fact of which the attorney was informed for the purpose of securing *primarily* either an opinion of law or legal services or assistance. Neither the index nor the document itself make a sufficient showing that the attorney-client privilege applies.

## WORK PRODUCT PRIVILEGE

■ The work product privilege, first established in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and incorporated in Fed.R.Civ.P. 26(b)(3), protects from disclosure any material prepared by an attorney, a party or an agent of either in anticipation of litigation. *Moore v. Pitney Bowes, Inc. and Monarch Marking Systems, Inc.*, 79–CV–126 (N.D.N.Y. August, 1981) (Munson, C.J.). The Supreme Court in *Hickman*, 329 U.S. at 510–511, 67 S.Ct. at 393–394, stated the rationale behind according such protection to the attorney's work product:

[I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be relevant from the irrelevant facts, pre-

pare his legal theories and plan his strategy without undue and needless interference.

The work product doctrine extends protection to "data assembled by attorneys or agents acting in an investigative role on behalf of a client and to parties or their agents who in readiness for litigation, prepare materials [8] designed to aid their cause." *Moore v. Pitney Bowes, Inc. and Monarch Marking Systems, Inc.,* 79–CV–126 (N.D.N.Y. August, 1981) (Munson, C.J.). Whether a document was prepared in "anticipation of litigation" depends upon a number of factors such as "proximity to the date of trial, the purpose for the document's preparation and whether the document was prepared as a regular business practice." *Id.*

DOE invokes Rule 26(b)(3), claiming that the work product privilege applies to documents P–5, P–10, P–12, P–17, a portion of P–18, and P–19. DOE contends that the documents were prepared by attorneys or under the direction of attorneys and with an eye toward litigation. DOE argues that the work product reflects the mental impressions, conclusions, opinions and legal theories of the DOE attorneys and as such is subject to disclosure not merely by a showing of "substantial need" by Mobil, but rather only in "rare situations." [9]

DOE further argues that even if the standard to be applied is one of "substantial need," Mobil has failed to meet its burden because DOE has already "responded in detail" to Mobil's interrogatories covering those subjects included in the privileged documents. DOE asserts that the individual agency employees' analysis as contained in these withheld documents is not relevant to the DOE's analysis and, therefore, Mobil cannot assert a pressing need for the documents.

Mobil argues that DOE has failed to establish that the withheld documents were prepared in anticipation of litigation. Furthermore, Mobil contends that even if these documents fall within the privilege, the documents concern the agency's views on the disappearance of old oil and Mobil's "substantial need" for the documents and the unavailability of the documents from other sources outweighs the department's need for nondisclosure.

P–5, according to the index, was *forwarded* to the General Counsel to express Butler's preliminary position on the problems associated with the "disappearance of old oil." The index claims that the document was prepared by or under the supervision of agency counsel in anticipation of litigation on the consequences resulting from the termination of the Entitlements Program. In most cases, portions of the document have been identified for "Limited Official Use Only," and the confidential nature of this document has been preserved. Release, it is claimed, would reveal the analysis and legal theories of government counsel prepared in anticipation of litigation.

The complaint was filed in April 1981; this document was prepared in September 1981 and is on the subject of "disappearing old oil." There is, however, no specific mention of the litigation and no discussion of legal theories or strategy re-

---

**8.** The *Hickman* court anticipated that without work product immunity "... much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." *Upjohn Co. v. United States,* 449 U.S. 383, 398, 101 S.Ct. 677, 686, 66 L.Ed.2d 584 (1980) quoting *Hickman v. Taylor,* 329 U.S. at 511, 67 S.Ct. at 393 (1949).

**9.** The work product doctrine as embodied in Rule 26 distinguishes between documents and tangible things constituting attorney work product and that work product which reveals the attorney's mental processes. "Rule 26 accords special protection to work product revealing the attorney's mental processes. The Rule permits disclosure of documents and tangible things constituting attorney work product upon a showing of substantial need and inability to obtain the equivalent without undue hardship." *Upjohn Co. v. United States,* 449 U.S. at 400, 101 S.Ct. at 688.

garding the pending litigation. The document was prepared by ERA Administrator Butler. It is unclear whether the attached appendices were prepared at Johnson's request and in preparation for trial. The report and the appendices contain factual data which, although relevant to the current litigation, does not appear to have been prepared for litigation purposes. In any event, Mobil's substantial need for the information would outweigh any possible interest in nondisclosure.

■ P–10 is a revision of Appendix 6 to P–5. The only justification for the claim of work product privilege is that the report contains information prepared by agency counsel in anticipation of litigation and disclosure would reveal the analysis of government counsel prepared in anticipation of litigation. For the reasons discussed above with regard to P–5, the work product privilege does not apply to P–10.

■ The attorney work product privilege is claimed for the body of P–12, and the predecisional privilege is claimed for the handwritten comments by F. Scott Bush, Acting Administrator, ERA. P–12 is a portion of P–19 and both documents are within the protection of the work product privilege and Rule 26(b)(3). P–19 is a fifty-four page memorandum discussing the legal problem relating to the January and Clean-Up Lists and deals specifically with the development of litigation strategies and theories for the *Mobil Oil* and *Union Oil* cases. The document was written in preparation for litigation and reflects the mental processes of William Funk, the Assistant General Counsel. The confidentiality has been maintained. Mobil has not presented any facts which would overcome the strict privilege accorded the thought processes of attorneys under Rule 26.

■ The predecisional privilege was not properly invoked for the handwritten notes on P–12. However, the court has examined P–12 in toto in order to determine whether the work product privilege applies to the body of P–12. The Court feels that it is impossible to separate the handwritten notes from the body of P–12. Further it is impossible to protect the body of P–12 and, at the same time, compel disclosure of the notes. Thus, the Court has examined the handwritten notes and has determined that the predecisional privilege would protect the notes from disclosure.

■ P–17, a one page forwarding memorandum and a sixteen page memorandum entitled "Impact of the Tertiary Incentive Program on the Entitlements Program" was prepared by William Funk in his capacity as Assistant General Counsel for purposes of attaching it as an appendix to DOE's response to Mobil's petition for rulemaking. The confidentiality has been maintained. The document contains agency counsel's thought processes and was prepared in anticipation of litigation. As such the document is protected by the attorney work product privilege. Mobil fails to overcome the strict privilege accorded to the attorney's thought processes under Rule 26.

■ P–18 is divided into two parts. The work product privilege is claimed for the first part, a seventeen page draft report entitled "The Effect of the Tertiary Incentive Program on the Entitlements Program." Written by agency counsel Ben McRae, P–18 presents McRae's overview of the Tertiary Incentive Program and focuses on the reflection of tertiary certification and recertification in entitlement program data. This portion of P–18 is a revised draft with handwritten notations by Douglas H. Harnish, Jr., Crude Oil Regulations Petroleum Analysis Division, ERA, it is also an update to P–10, P–13, and Appendix 6 of P–5. The work product privilege is inapplicable here for the reasons discussed under P–5.

## CONCLUSION

For the foregoing reasons, Mobil's motion is granted in part and denied in part. DOE is ordered to disclose documents P–1 and P–3 through P–23, excluding P–11 which is protected by the attorney-client privilege; P–12, a portion of P–19, and P–17, which are protected by the work

product privilege; and the handwritten notes on P–12, which are protected by the predecisional privilege.

It is so Ordered.

## ON MOTION FOR RECONSIDERATION

Presently before the Court is defendant Department of Energy's motion for reconsideration of this Court's Memorandum-Decision and Order dated April 16, 1983. Upon careful consideration of the documents, memoranda of law, and oral argument presented by both sides, the Court denies defendant's motion for reconsideration.

The Court's April 16, 1983 decision granted plaintiff Mobil Oil Corporation's motion to compel the production of certain documents. The Department of Energy had refused to produce twenty-two documents, P–1 and P–3 through P–23. DOE claimed: the predecisional privilege with regard to each of the documents; the attorney-client privilege with regard to P–3, P–5, P–11, and P–22; and the work product privilege with regard to P–5, P–10, P–12, P–17, a portion of P–18 and P–19. DOE supported its privilege claim with an unsworn index of documents and submitted the documents to the Court for *in camera* inspection. By its decision of April 16, 1983, the Court denied DOE's predecisional privilege claims on procedural grounds as to all documents except P–12; denied the attorney-client privilege claims as to all documents except P–11; and denied the work product privilege claim as to all documents except P–12, P–17, and a portion of P–19.

DOE now moves for reconsideration of the Court's decision. DOE argues that it followed the proper procedures for invoking the predecisional privilege as set out in *Department of Energy v. Brett*, 659 F.2d 154 (TECA 1981), *cert. denied*, 456 U.S. 936, 102 S.Ct. 1992, 72 L.Ed.2d 456 (1982). DOE argues that under the *Brett* decision, it is unnecessary for the DOE to submit an affidavit by the agency's head or a high ranking subordinate as long as the Department was willing to provide the Court with an index of documents and to submit the

documents for *in camera* inspection by the Court. DOE contends that the Court erred in requiring DOE to submit such an affidavit. DOE further contends that the document index submitted in this case was sufficiently detailed, and that the Court should have requested additional detail instead of denying the DOE's predecisional privilege claim on this procedural ground.

The Department of Energy also takes issue with the Court's denial of the attorney-client privilege claim. DOE asserts that the Court erred in its determination that the Department failed to show that the information was being communicated for the purpose of *primarily* securing legal advice, opinion, services or assistance. DOE asserts that the members of the DOE General Counsel's office do not serve dual roles as attorneys and policy makers.

DOE also disagrees with the Court's decision as to the work product privilege. According to the Department, the documents were generated for purposes of litigation, and the documents clearly focus on issues that are encompassed by the pending litigation. The Department argues that the document need not expressly mention the pending litigation in order to come within the work product privilege. Further, DOE argues that the Court erred in finding that Mobil had a "substantial need" for the documents which would overcome the DOE's privilege claim. DOE now submits a revised, more detailed index of privileged documents.

The Court finds that the DOE has made no arguments which would compel a deviation from this Court's prior interpretation of the procedural safeguards of *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Moreover, DOE's submission of a more detailed index of privileged documents is untimely. Information which was available all along to the DOE and may have been helpful to this Court's determination of defendant's privilege claims should have been submitted by the DOE to this Court at the time that the motion was submitted or within a reason-

able time thereafter, but not after the Court has decided the motion.

Furthermore, the Court adheres to its decision at pages 11–18 with regard to the attorney-client privilege and work product privilege claims. The Court denied defendants' privilege claims for a number of reasons. DOE has provided no new information or arguments which would negate the Court's overall analysis that the above enumerated documents do not fall within either the attorney-client or the work product privilege.

For the foregoing reasons, DOE's motion for reconsideration is denied. The Court will provide the parties with the appropriate time in which to arrange for the expeditious disclosure of the documents.

It is so Ordered.