**MOBIL OIL CORPORATION, Plaintiff,**

**v.**

**DEPARTMENT OF ENERGY and James B. Edwards, Secretary, Defendants.**

**No. 81–CV–340.**

United States District Court,
N. D. New York.

May 15, 1981.

---

Bond, Schoeneck & King, Syracuse, N. Y., Akin, Gump, Strauss, Hauer & Feld, Washington, D. C., William C. Streets, Gail F. Schultz, Fairfax, Va., for plaintiff; Thomas E. Myers, R. Bruce McLean, Daniel Joseph, Harry R. Silver, Joseph T. Casey, of counsel.

George H. Lowe, U. S. Atty., N.D:N.Y., Syracuse, N. Y., Thomas H. Kemp, Samuel Sooper, Washington, D. C., for defendants; Paula Ryan, Asst. U. S. Atty., of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

Presently before the Court is a motion by defendant Department of Energy (DOE) to quash the subpoena of plaintiff Mobil Oil Corporation (Mobil), which seeks the production of a study commissioned by the DOE, and an accompanying intra-agency memorandum. Mobil has identified these documents as follows:

1. Contractors Report: Validation of Crude Oil Entitlements Information System; prepared by Transportation Energy Research Associates; dated March 9, 1981 (two volumes); and,

2. Memorandum to Al Linden from Charles Smith (referencing the above study), undated.

The DOE seeks to quash Mobil's subpoena on the grounds that the documents demanded thereunder are protected from release by the pre-decisional executive privilege, and that the documents are irrelevant to the instant proceedings. Mobil counters that

the disputed documents are not properly the subject of executive privilege because the DOE has failed to satisfy the strict procedural requirements for assertion of the privilege, or demonstrate that the documents contain the type of information that may properly be withheld under executive privilege. Furthermore, Mobil asserts that even assuming that the disputed documents do contain privileged information, Mobil's need for the information outweighs whatever value that would accrue to the DOE in preserving its confidentiality. On May 11, 1981, the Court ordered the DOE to submit the "Validation" study for in camera inspection. Having completed this inspection, and upon consideration of the arguments of the parties and the applicable law, the Court concludes that the "Validation" study must be released by the DOE to Mobil. The accompanying agency memorandum, however, would appear to be protected from release by executive privilege. The reasons for these decisions follow.

■ Among the evidentiary privileges traditionally recognized by the courts is a subcategory of the executive or governmental privilege, which is termed the pre-decisional privilege. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). Under this privilege the government may properly withhold documents requested by its adversaries during discovery, that reflect " 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.' " *Id.* at 150, 95 S.Ct. at 1516. The purpose of this privilege is to encourage frank discussion of ideas and policies. Typically such exchanges would be inhibited were the participants to expect that their remarks would be disseminated publicly. *Id. See also Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980). Thus, by protecting from disclosure the ebb and flow of the deliberative process, the pre-decisional privilege seeks to ensure the quality of governmental decisionmaking. *NLRB v. Sears, Roebuck & Co., supra* 421 U.S. at pp. 150–51, 95 S.Ct. at p. 1516.

At the same time, courts have held that the pre-decisional privilege is limited and, for example, would not include "purely factual material," even if such material is contained in "deliberative memoranda." *EPA v. Mink*, 410 U.S. 73, 87–88, 91, 93 S.Ct. 827, 836, 838, 35 L.Ed.2d 119 (1973); *Parke, Davis & Co. v. Califano*, 623 F.2d 1, 5 (6th Cir. 1980); *Vaughn v. Rosen*, 523 F.2d 1136, 1145 (D.C.Cir.1975); *In re Franklin Nat. Bank Securities Lit.*, 478 F.Supp. 577, 583–84 (E.D.N.Y.1979). In determining whether material is "purely factual" or deliberative, a court must have "an understanding of the function of the documents in issue in the context of the administrative process which generated them." *N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 138, 95 S.Ct. 1504, 1510, 44 L.Ed.2d 29 (1975). Moreover, the government has the burden of proof on the applicability of the pre-decisional privilege. *Gulf Oil Corp. v. Schlesinger*, 465 F.Supp. 913, 917 (E.D.Pa.1979).

Courts have outlined specific procedures which must be followed by the government when invoking the pre-decisional privilege. First, the claim of the privilege must be lodged by the head of the agency which has control over the matter, after personal consideration of the allegedly privileged nature of the information. *Coastal Corp. v. Duncan*, 86 F.R.D. 514, 516–17 (D.Del.1980). This power to claim the privilege may be delegated by the head of the agency, but only to a subordinate with high authority. Nevertheless, before this properly may be done, the head of the agency must issue guidelines on the use of the privilege. These requirements are designed to guarantee both that the delegatee official has sufficient expertise in the agency's operations and functions, and will be able to render decisions on privileged information after reasoned judgment. The second procedural requirement is that a claim of privilege must specifically designate and describe the information that is purportedly privileged. And third, the agency must provide "precise and certain" reasons for preserving the confidentiality of the requested information. *Id.* at 517–19.

■ After determining that an agency has rightfully asserted the pre-decisional privilege, and has satisfied the applicable procedures, a court may still rule that the privileged information must be released. This is because the pre-decisional privilege is not absolute, but is only a qualified right. *In re Franklin Nat. Bank Securities Lit.,* 478 F.Supp. 577, 582 (E.D.N.Y.1979). Consequently, a court must weigh the competing interests militating for and against disclosure of the privileged information. For instance, though the deliberative process in governmental decision-making merits protection, against this consideration must be balanced the interest of the private litigant, the need for accurate judicial fact-finding, and even the public interest in learning how effectively the government is operating. *Id.* The court in *In re Franklin* also considered the following factors:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence, *see, e. g., Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena,* 40 F.R.D. 318, 331 (D.D.C.1966), *aff'd on opinion below,* 128 U.S.App.D.C. 10, 384 F.2d 979, *cert. denied,* 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967); (iii) the "seriousness" of the litigation and the issues involved, *see, e. g., Freeman v. Seligson,* 132 U.S.App.D.C. 56, 60, 405 F.2d 1326, 1340 (D.C.Cir.1968); (iv) the role of the government in the litigation, *see, e. g., Carl Zeiss Stiftung,* 40 F.R.D. at 329; *Bank of Dearborn v. Saxon,* 244 F.Supp. 394, 401–03 (E.D.Mich.1965), *aff'd,* 377 F.2d 496 (6th Cir. 1967); and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Id.* at 583.

■ In the instant case, the Court does not believe that the government has sufficiently demonstrated that the "Validation" study is deliberative information within the ambit of the pre-decisional privilege. Aptly entitled "Validation of the Crude Oil Entitlements Information System," an abstract contained in the report describes its scope:

The objective of the study was to assess the ability of the [entitlements] system to provide appropriate and meaningful information of sufficient accuracy in relation to the requirements of the primary user(s). The study examined in detail the evolution and purpose of the system and the regulatory program it supports, the DOE processing of the information, the respondent reporting practices, as well as the uses of the data being collected. The principal focus of the study was, however, to quantitatively assess the quality of the data being collected, processed and used, and to identify and quantify the consequences and degree of data quality for the primary and other users of the data.

The abstract goes on to describe the findings of the study, which are more appropriately left for consideration at another time.

For present purposes, however, despite the DOE's claims that the study is pre-decisional because it is in draft form and has yet to be formally cleared by the DOE for publication, the opposite conclusion is indicated. The "Validation" study is a quantitative assessment of the quality of the entitlements program data system, and the "consequences" to users from relying on the existing system. As such, the study is clearly post-decisional because it analyzes a decision that has been made already. *See NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 152 and n. 19, 95 S.Ct. 1504, 1517 and n. 19, 44 L.Ed.2d 29 (1975); *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980); *Cliff v. Internal Revenue Service,* 496 F.Supp. 568, 575 (S.D. N.Y.1980).

Furthermore, because the only purpose of the study was to "identify" and "quantify," the Court is hard-pressed to view it as anything but purely factual material which, therefore, is not privileged. *See EPA v. Mink,* 410 U.S. at 89, 93 S.Ct. at 836; *Parke, Davis & Co. v. Califano,* 623 F.2d 1, 5 (6th Cir. 1980); *Coastal States Gas Corp. v. Department of Energy, supra* at pp. 866–869; *Soucie v. David,* 448 F.2d 1067, 1077 (D.D.C. 1971); *Cliff v. Internal Revenue Service,*

*supra* at p. 575; *In re Franklin Nat. Bank Securities Lit.*, 478 F.Supp. 577, 583–85 (E.D.N.Y.1979). The study was not intended to give advice, *compare Lead Industries Ass'n v. Occup. S. & H. Admin.*, 610 F.2d 70, 83 (2d Cir. 1979), or to interpret the existing record with a view toward changing present policy. *Id.* Neither is there anything suggestive or personal about the study, nor does it contain "agency give-and-take." *Coastal States Gas Corp. v. Department of Energy, supra* at p. 868. In sum, the Court is convinced that the study in dispute is post-decisional and factual in substance, and would not properly fall under the protection of the pre-decisional privilege.

■ Only brief mention need be made on the pre-decisional and deliberative characteristics of the accompanying memorandum to the "Validation" study. As a primary hurdle there is some question concerning the actual identity of the accompanying memorandum. Plaintiff Mobil has requested that the DOE produce an undated memorandum to one Al Linden from one Charles Smith. The DOE has in fact identified two such memoranda according to the April 22, 1981 affidavit of Albert H. Linden, Acting Administrator of the Energy Information Administration. These documents are dated respectively March 12, and 13, 1981. It should be noted that Mr. Linden's affidavit is the only evidentiary support provided by the DOE in support of its motion to quash. Apparently Mobil seeks the March 12, 1981 memorandum, which is described by the Linden affidavit as containing Mr. Smith's draft "findings and recommendations concerning the use of the data collected by the Entitlements System." Personal findings and recommendation of this sort, as indicated by the above discussion of the law, are privileged since they are truly pre-decisional and deliberative in function. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 869 (D.C.Cir. 1980); *Lead Industries Ass'n v. Occup. S. & H. Admin.*, 610 F.2d 70, 83 (2d Cir. 1979).

The next question to be examined by the Court is whether the DOE satisfied the applicable procedural requirements when it invoked the pre-decisional privilege. Evidence presently before the Court demonstrates that little effort was made by the DOE to satisfy the various procedural requirements. The DOE does not claim that its Secretary personally reviewed the contents of the disputed documents. Neither has the DOE offered any proof as to whether the Secretary properly delegated to Acting Administrator Linden the authority to invoke the pre-decisional privilege. Still, as a DOE Administrator, Linden would appear to possess the requisite authority. *See Coastal Corp. v. Duncan*, 86 F.R.D. 514, 517 (D.Del.1980). In any event, the DOE has not submitted to the Court any administrative guidelines designed for the purpose of assisting the "delegatee" official in deciding whether to invoke the pre-decisional privilege.

A second requirement under the procedures is that documents withheld by the agency on a claim of privilege must be specifically described by the agency. This step has been complied with by the DOE through the statements contained in the Linden affidavit, although the description of the "Validation" study is more specific than the description of the accompanying March 12, 1981 memorandum. Linden's description of the "Validation" study is clear enough so that a reader may appreciate the role of the study in the DOE's operations. The same could not as readily be said about Linden's description of the March 12, 1981 memorandum. Only a charitable reading of the four corners of the Linden affidavit reveals its intended meaning—the disputed memorandum embodies Mr. Smith's personal recommendations for policy changes in the use of entitlements system information. It would, therefore, seem that the March 12, 1981 memorandum is adequately described, and meets the requirements of applicable procedures.

As a third procedural obstacle, an agency must provide "precise and certain" reasons for preserving the confidentiality of requested information. As for the "Validation" study, the DOE has failed even to attempt to provide the Court with an expla-

nation for withholding its release. The Linden affidavit asserts that the release of the March 12, 1981 memorandum would "confuse the public as to the facts and reasons underlying the agency's position in the final version." This supposed justification is entirely unsatisfactory. In the Court's view this "explanation" is more of a comment on the competency or literacy of the author of the report, than on the public's ability to understand it. A second reason provided by Linden's affidavit is that the release of the March 12, 1981 memorandum would "discourage the free and frank exchange of ideas in the agency's decision-making process and endanger the objective nature of the agency deliberations which will lead to the final publication of the report by the agency." The Court agrees with plaintiff Mobil that this statement is rather conclusory. But the personal and tentative policy recommendations of the type which appear to be found in the March 12, 1981 memorandum, have been traditionally protected from release by the pre-decisional privilege, and accordingly would satisfy the third procedural requirement.

The final duty of a court is to balance the competing interests of the parties with respect to the release of the disputed information. While the DOE has offered no reasons to justify withholding the "Validation" study, Mobil has offered several persuasive reasons that weigh in favor of releasing the study. First, the "Validation" study relates directly to a central issue of the present litigation. Specifically, the reasonableness of the DOE's desire to issue the January, 1981 entitlements notice in view of the possibility that the notice is based upon inaccurate data. Second, the DOE is in exclusive control of material regarding the effectiveness of its own regulations and information gathering systems, and the extent to which they have been complied with by the oil companies. Third, Mobil argues that the factual nature of the "Validation" study decreases the likelihood that public dissemination would cause any government employees to be inhibited from expressing their views in the future.

Other broader public interest concerns would also favor disclosure of the "Valida-

tion" study. The judiciary's need for accurate information to guarantee informed decision-making is one of these. Due to the DOE's control over the entitlements system, it would be much harder for the Court to reach a reasoned judgment in this case without the DOE's own internal studies of the effectiveness of that system. The public interest in the proper functioning of its governmental agencies is also implicated. The DOE has been accused in this law suit of mismanaging a billion dollar governmental program that has far-reaching affects on the American public. The thorough airing of these complaints would be hampered were the DOE permitted to withhold the "Validation" study.

And finally, the release of the "Validation" study reduces the significance to Mobil of the March 12, 1981 memorandum, which merely provides one official's tentative recommendations for policy changes based on the "Validation" study's conclusions. Much more relevant to the instant case is a factual assessment of the effectiveness of the entitlements information system, and its impact on the existing users of the system. This, of course, is the precise subject of the "Validation" study. As such, the plaintiff's need for the tentative recommendations does not outweigh the DOE's interest in preserving the pre-decisional and deliberative information contained in the March 12, 1981 memorandum.

In conclusion, the defendant DOE's motion to quash Mobil's April 21, 1981 subpoena is denied as to the document entitled "Validation of Crude Oil Entitlements Information System," and is granted with regard to the March 12, 1981 memorandum addressed to the attention of Albert H. Linden, Jr. Defendant DOE is hereby ordered by this Court to immediately provide an accurate and complete copy of the "Validation" study to plaintiff Mobil.

IT IS SO ORDERED.