**42**

The MARY IMOGENE BASSETT HOSPITAL, Plaintiff,

v.

Louis W. SULLIVAN, M.D. Secretary, Department of Health and Human Services and Empire Blue Cross/Blue Shield, Defendants.

No. 86–CV–1287.

United States District Court,
N.D. New York.

April 17, 1991.

Winthrop, Stimson, Putnam & Roberts (Leo T. Crowley, Michele A. Masucci, of counsel), New York City, Kernan & Kernan (Leighton R. Burns, of counsel), Utica, N.Y., for plaintiff.

Frederick J. Scullin, Jr., U.S. Atty. (George A. Yanthis, Asst. U.S. Atty., of counsel), Albany, N.Y., Annette H. Blum, Chief Counsel, Region II, Dept. of Health and Human Services (Robert Wanerman, Asst. Regional Counsel, of counsel), New York City, for defendants.

## MEMORANDUM DECISION AND ORDER

CHOLAKIS, District Judge.

This case involves plaintiff's challenge to the determination by defendant, through its fiscal intermediary, Blue Cross/Blue Shield, of the amount of money to which plaintiff was entitled for the years 1976–1981 under the Medicare reimbursement provisions.

In the present motion, plaintiff moves to (1) compel discovery of six documents it considers relevant to that portion of the lawsuit challenging the validity of 42 C.F.R. §§ 405.465(g) & (h),[1] and (2) require defendant Secretary to permit plaintiff's

1. These regulations contain the "formula" for determining the Medicare reimbursement for physicians' direct medical and surgical services rendered in a teaching hospital.

"economic consultants" to inspect the contents of a data base maintained by a consulting firm under contract with the Health Care Financing Administration ("HCFA"). According to defendant, the data base, consisting of Medicare Part A and B patient records, contains 84 million documents.

## The Documents

Defendant opposes the motion to compel discovery of the six documents on the ground that they are protected from disclosure by the "predecisional" or "deliberative process" privilege, an apparently judicially-created qualified privilege, the underlying purpose of which is to promote candor in agency policy formation and decisionmaking by preventing public disclosure of documents falling within its scope. The privilege protects the " 'decision making processes of government agencies,' ... and focus[es] on documents 'reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.' " *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975) (citations omitted).

The agency bears the burden of establishing the applicability of the privilege in a given case. *Access Reports v. Department of Justice*, 926 F.2d 1192 (D.C.Cir. 1991); *Safecard Services, Inc. v. Securities and Exchange Comm'n*, 926 F.2d 1197 (D.C.Cir.1991). To meet its burden, the agency must show that the document is both "predecisional" and "deliberative." *Access Reports*, 926 F.2d at 1194; *Local 3, Int'l Brotherhood of Elec. Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir.1988). Put another way,

> an agency must establish that: "1) the materials were part of a deliberative process by which policies or decisions are formulated ..., and 2) that the materials were truly of a predecisional, or advisory or recommendatory nature, or expressed an opinion on a legal or policy matter, or otherwise were reflective of a deliberative process."

*Mobil Oil Corp. v. Department of Energy*, 102 F.R.D. 1, 5 (N.D.N.Y:1983) (citation omitted).

■ According to the analysis applied by Judge Munson in an earlier ruling in the *Mobil* case, an agency must also meet certain procedural requisites when invoking the privilege: First, the claim of privilege must be lodged by the head of the agency, or by a high-level subordinate/delegatee, "after personal consideration of the allegedly privileged nature of the information." *Mobil Oil Corp. v. Department of Energy*, 520 F.Supp. 414, 416 (N.D.N.Y.1981), *rev'd on other grounds*, 659 F.2d 150 (TECA), *cert. denied*, 454 U.S. 1110, 102 S.Ct. 687, 70 L.Ed.2d 651 (1981). Second, the claim of privilege "must specifically designate and describe the information that is purportedly privileged." *Id.* Third, the agency must provide " 'precise and certain' reasons for preserving the confidentiality of the requested information." *Id.* (citation omitted).

■ Further, even if the privilege has been properly invoked, it is only a qualified privilege. The court must therefore "weigh the competing interests militating for and against disclosure of the privileged information." *Id.* at 417. The *Mobil* court set forth the following factors to consider in the required balancing:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues involved; (iv) the role of the government in the litigation [citation omitted]; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

520 F.Supp. at 417 (quoting *In re Franklin Nat'l Bank Securities Litigation*, 478 F.Supp. 577, 583 (E.D.N.Y.1979)) (citations omitted); *see also FTC v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir.1984); *Callaway Community Hosp., et al. v. Sullivan*, No. 89–4488–CV–C–5, 1990 WL 125176 (W.D.Mo. July 6, 1990).

■ Turning to the case at hand, the Government has met its procedural burden. Gail R. Wilensky, Ph.D., Administrator of

HCFA, who was appointed by the President and confirmed by the Senate, has submitted a declaration (1) stating that the Secretary of HHS has delegated to her the authority regarding disclosure of information relevant to the mission of HCFA, (2) stating that she has personally reviewed the documents at issue, and that they were "created in the process of formulating agency policy and procedures; they are predecisional because they contain opinions and advice that were intended for use within HCFA and HHS," Wilensky Decl. par. 5, and (3) to which is attached a list specifying and describing the contents of the six documents. *See* Wilensky Decl.Ex.A.

The Secretary argues that all six documents are "predecisional" because "they were produced either before a final agency decision or policy was reached, or the regulation ... was published in final form in the *Federal Register*." Def.Mem. at 9–10. The documents are "deliberative" "because they were intended to play a role in the agency's decisionmaking process." *Id.* at 10.

Initially applying the factors set forth in *Mobil* for balancing the competing interests of the litigants, the documents are clearly relevant to the underlying controversy. All relate to the issue of reimbursement for physician services in a teaching hospital. Four of the six were drafted during the period in which the challenged regulations were drafted. The other two specifically refer to the issue in their titles.

Defendant argues that the documents are only relevant if "properly part of the record before the agency when it promulgated the challenged regulation." Def. Mem. at 12. Defendant then argues that plaintiff has failed to establish any valid reason for disclosure. *Id.* This argument, although interesting, is not dispositive. The documents are clearly relevant to the understanding of the agency approach to reimbursement for physician services at teaching hospitals. The four documents

authored during the period of drafting the regulations may in fact have been part of the rulemaking record. Unfortunately, this cannot be determined, because the original rulemaking record was apparently destroyed during an agency reorganization in 1978–79, pursuant to which "documents over five years old that were not subject to an official record retention policy were destroyed." Def. Response to Interrogatory No. 17, Pl. Second Set of Interrogatories (*see* Crowley Decl.Ex.B). Relevance tips in favor of disclosure.

Second, given the unavailability of a rulemaking record, the next factor also favors disclosure. It should be noted that the defendant did provide 21 documents (one with redactions) dealing with the issue, totalling over 750 pages. *See* Def.Mem. at 3 & 8; Crowley Decl.Ex.A. The defendant claims that plaintiff seeks to fabricate a new record in this Court, which, it is alleged, plaintiff cannot do. The District of Columbia Circuit has stated that

[i]f a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision.... To review less than the full administrative record might allow a party to withhold evidence unfavorable to its case, and so the APA requires review of "the whole record." [citation omitted] ... To review more than the information before the Secretary at the time she made her decision risks our requiring administrators to be prescient or allowing them to take advantage of post hoc rationalizations. [citation omitted].

*Walter O. Boswell Memorial Hosp. v. Heckler,* 749 F.2d 788, 792 (D.C.Cir.1984). The Supreme Court has held that "review is to be based on the full administrative record that was before the Secretary *at the time he made his decision." Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971) (emphasis added).[2]

---

**2.** Defendant cites Recommendation No. 74–4 of the Administrative Conference of the United States, which defines what the administrative record should contain:

In the absence of a specific statutory requirement to the contrary, the following are administrative materials that should be before a court for use in evaluating, on preenforce-

While it is true that some of the documents here sought by plaintiff could not have been before the Secretary when the regulations at issue were promulgated, this Court cannot have before it the rulemaking record, because such record was destroyed. In addition, some of the documents may have been part of the rulemaking record, although the defendant claims that all the contested documents "are inter-agency memoranda between superiors and subordinates within HHS and HCFA." Def. Mem. at 9. In addition, plaintiff has deposed one official alleged to have been involved in the development of the regulation, and argues that his testimony reveals very little about the source of the formula at issue. Without the rulemaking record or helpful alternative testimony by persons involved in the promulgation, this factor favors the plaintiff.

The third factor, the "seriousness of the litigation," is not very helpful. Plaintiff challenges the method of reimbursement for physician services in teaching hospitals. The effect of invalidating such regulations would be widespread and costly. The "seriousness" may therefore be assumed.

Nor is the fourth factor, the government's role in the litigation, particularly helpful. The defendant argues that this is not a case where it has initiated the lawsuit based on confidential information that it now seeks to protect. Although this may

ment judicial review, the factual basis for rules adopted pursuant to informal procedures prescribed in 5 U.S.C. § 553: (1) The notice of proposed rulemaking and any documents referred to therein; (2) comments and other documents submitted by interested persons; (3) any transcripts of oral presentations made in the course of the rulemaking; (4) factual information not included in the foregoing that was considered by the authority responsible for promulgation of the rule or that is proffered by the agency as pertinent to the rule; (5) reports of any advisory committees; and (6) the agency's concise general statement or final order and any documents referred to therein. [a footnote cites the availability of privilege with respect to (6)]. 1 C.F.R. § 305.74–4. Obviously, the present case does not involve "preenforcement judicial review." The list is, however, instructive. In addition, it points out how little information is available to plaintiff or presently before this Court.

be true, the defendant is also privy to the only available information surrounding the development of the challenged regulation. This factor therefore favors neither party.

Finally, the fifth factor concerns the "chilling" effect that disclosure would have on the free exchange among agency employees when developing regulations. To clarify this factor, it is necessary to analyze the applicability and purposes of the privilege with respect to each document.

As to the "predecisional" issue, documents 27 & 30 were drafted in 1981 and 1980, respectively, six and five years after the regulation was finalized. The Secretary argues that the date of the documents is not dispositive, since "both documents were part of HCFA's ongoing process of resolving policy issues that relate to the regulation." Def.Mem. at 11.

The Supreme Court did recognize that the line between pre- and post-decisional is not a bright one. *See NLRB v. Sears*, 421 U.S. at 151 notes 18 & 19, 95 S.Ct. at 1517 notes 18 & 19.[3] It is not necessary that the agency be able to pinpoint a final decision for which the document was generated. Instead, the focus should be on whether the document relates to an ongoing deliberative process. The District of Columbia Circuit has attempted to clarify the problem as follows:

3. The Court stated:

> Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process.

*Id.* n. 18. The Court further stated:

> We are aware that the line between predecisional documents and postdecisional documents may not always be a bright one.... For present purposes it is sufficient to note that final opinions are *primarily* (cont....) postdecisional—looking back on and explaining, as they do, a decision already reached or a policy already adopted—and that their disclosure poses a negligible risk of denying to agency decisionmakers the uninhibited advice which is so important to agency decisions.

*Id.* n. 19.

[T]he "deliberative" and "predecisional" requirements tend to merge. Both terms have come to apply only to documents that contribute to an ongoing deliberative process within an agency. For instance, ... a document is deliberative if it "reflects the give-and-take of the consultative process", [citation omitted], while [in another case] [citation omitted], we observed that "[p]redecisional documents are thought generally to reflect the agency 'give-and-take' leading up to a decision that is characteristic of the deliberative process." [citation omitted].

*Access Reports*, 926 F.2d at 1195.

This explication admittedly does little for our present needs. The two documents implicating the "predecisional" issue in the present case were generated long after the final regulation. The question then becomes whether, as is alleged by the Secretary, they were generated in the ongoing deliberative process.

■ Document 27 is entitled "Request for a Policy Clarification on the Reimbursement of Physicians' Services Under the Cost Election in a Teaching Hospital." It "discusses the allocation of costs between Parts A and B based on the statute and regulations, and contains recommendations to be made from HCFA to a Medicare fiscal intermediary." Wilensky Decl.Ex.A.[4] Although the author and recipient of this document are named, their positions are not stated.

From the scarcity of information presented to this Court, this document appears to be "the application and implementation of the established policies" in a given instance, *see Callaway Community Hosp.*, 1990 WL 125176 at *4, not a predecisional or deliberative document subject to the privilege. The document is therefore post-decisional, not within the privilege, and should be disclosed to the plaintiff.

■ Document 30 is described as a memorandum from the then-HCFA Administrator to the then-Secretary of HHS, entitled "Reimbursement for Physician Services Furnished in Teaching Hospitals." It is an eighteen page memorandum with one attachment, "which discusses HCFA's options in drafting regulations and contains HCFA's recommendation to the Secretary...." Wilensky Decl.Ex.A.

Notwithstanding that the document was drafted approximately six years after the regulation was finalized, it appears to have been generated as part of the agency's "continuing process of examining their policies," *NLRB v. Sears*, 421 U.S. at 151 n. 18, 95 S.Ct. at 1517 n. 18, and could therefore reasonably be considered "deliberative" even if not "predecisional" with respect to the regulations here challenged. The motion with respect to this document is denied.

■ Similarly, Documents 37, 38 and 40, predecisional by date and apparently deliberative in content, should be protected from disclosure. Each appears to be a document drafted for review by a recipient of higher authority. The Circuit for the District of Columbia has stated:

A key feature under both the "predecisional" and "deliberative" criteria is the relation between the author and recipients of the document. A document from a junior to a senior is likely to reflect his or her own subjective opinions and will clearly have no binding effect on the recipient. By contrast, one moving from senior to junior is far more likely to manifest decisionmaking authority and to be the denouement of the decisionmaking rather than part of its give-and-take.

The three documents just cited are all "from a junior to a senior,"[5] which evi-

---

**4.** The Secretary elsewhere characterizes the contents of this document as "a discussion of HCFA's possible responses to a request for assistance regarding a hospital's election to be reimbursed as a teaching hospital." Def.Mem. at 10.

**5.** Document 37 was drafted by the Assistant Executive Secretary for Health for review by the

Under Secretary, Department of Health Education and Welfare. Document 38 was drafted by the Acting Commissioner of Social Security for review by the Secretary of Health, Education and Welfare. Document 40 was drafted by the Assistant Secretary for Planning and Evaluation for review by the Assistant Executive

dences the "give-and-take" of the administrative deliberative process. The motion with respect to these documents is denied.

■ The remaining document, Document 39, is a memorandum to the Secretary of HEW from Charles C. Edwards, M.D., whose position, if any, within the government, is not cited. The document is entitled "Comments on Notice of Proposed Rulemaking to implement Section 227 of the Social Security Amendments of 1972." The document "discusses several objections to a draft set of regulations." Wilensky Decl.Ex.A.

This document is clearly relevant and clearly predecisional. What cannot be determined is whether it is deliberative. Notwithstanding the defendant's assertion elsewhere in its papers that all the disputed documents are inter-agency memoranda between superiors and subordinates within HHS and HCFA, *see* Def.Mem. at 9, the Court has not been informed of the author's position within the government, and therefore cannot determine whether the privilege even applies.

If the author was a government employee, and the document was "inter-agency," the privilege would apply and the motion with respect to the document would be denied. The motion is denied with leave to renew should plaintiff determine that the author was not a government employee, therefore raising the question of the applicability of the privilege.

### The Data Base

■ Plaintiff also seeks an order directing the defendant to make available a data base which contains 84 million documents consisting of Medicare Part A and B patient records. Plaintiff seeks access to the data base "for the purpose of performing a statistical analysis that would evaluate whether the regulations do or do not achieve the statutory requirement of reasonably apportioning costs to the Medicare program." Pl.Mem. at 9.

Defendant argues that (1) plaintiff has never made a formal discovery request

with respect to the data base, (2) the data base is not relevant to the underlying challenge to the regulation because it was not before the agency at the time the regulation was drafted and will be used to create a new document that does not already exist, and (3) disclosure should be denied under the Privacy Act, 5 U.S.C. § 552a.

Plaintiff has made this motion pursuant to Fed.R.Civ.P. 37(a), under which a motion to compel may be made

> if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested.

The first issue is whether plaintiff made a discovery request under Rule 34. On December 17, 1990, plaintiff's counsel wrote a letter to the defendant's counsel seeking written authorization for access to the data base, which was in the possession of a company under contract with HCFA. Defendant, citing Form 24 in the Fed.R.Civ.P. Appendix of Forms, argues that this letter does not constitute a formal discovery request, and absent such a request, a motion to compel is premature.

Although technically correct, denial of the motion on this ground would merely delay resolution of the real issue at hand. The letter does inform the defendant that plaintiff seeks access to, i.e. wants to inspect, the contents of the data base. The Form Request for Production contains no more detail than does the letter. One can easily surmise that, if the motion to compel is denied, plaintiff will serve a technically correct Form, defendant will refuse access, and plaintiff will then move to compel under Rule 37(a). This ground for denial of the motion is unavailing.

■ As to the second ground, this Court must determine initially whether the information sought is relevant to the underlying action. Discovery may be had

> regarding any matter not privileged, which is relevant to the subject matter involved in the pending action.... It is not ground for objection that the infor-

Secretary for Health, Department of Health, Education and Welfare.

mation sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b). Clearly, if the materials sought are relevant or calculated to lead to admissible evidence, they may be discovered.

In the present case, plaintiff seeks information, from which it will compile statistics and generate a new document, the subject of which will be whether the challenged regulation, as applied, actually accomplishes the purposes for which it was promulgated. Plaintiff does not address the issue of relevance, but rests his argument on the Privacy Act. Defendant argues that this kind of hindsight analysis is irrelevant to the challenge to the regulation, which must be based upon the facts known to and the record before the agency at the time the regulation was created. *See* discussion, *supra.*

It is true that the information may not be relevant to that portion of the complaint which alleges that the regulations are arbitrary, capricious and an abuse of discretion, and therefore invalid under APA § 706(2)(A). *See* Sixth Claim for Relief, Supplemental and Amended Complaint pars. 54 & 55. This claim can be construed as challenging the regulations as promulgated and, as discussed *supra,* the court's review should be limited to the record before the agency at the time the regulations were adopted.

Plaintiff also claims, however, that the regulations *as applied* do not result in reasonable apportionment of the provider's costs of physicians' services to Medicare patients, and contravene the express intent of Congress to reimburse providers for the reasonable costs of providing services to Medicare patients. *See* Fifth Claim for Relief, Supplemental and Amended Complaint pars. 52 & 53; 42 U.S.C. §§ 1395x(b)(7) & (v)(1)(A).[6]

The information in the data base would clearly be relevant to a challenge to the regulations as applied, as well as to the argument that they contravene the Congressional purposes for which they were allegedly promulgated to satisfy. On this basis, the records are discoverable.

This does not, however, end the inquiry. The defendant has raised the Privacy Act, which generally precludes disclosure of records absent the consent of the individual whose records are at issue. The defendant claims that plaintiff must make a showing of need to overcome the protections of the Privacy Act. Such an argument was specifically rejected by the District of Columbia Circuit, which stated

> [t]he Privacy Act … does not create a qualified discovery privilege as that concept is generally understood, and we find no basis in the statute or its legislative history for inferring one. Nor does the Act create any other kind of privilege or bar that requires a party to show actual need as a prerequisite to invoking discovery. Rather, the plain language of the statute permits disclosure "pursuant to the order of a court of competent jurisdiction." 5 U.S.C. § 552a(b)(11) (1982).... We therefore find no basis for inferring that the statute replaces the usual discovery standards of the FRCP—in particular, Rules 26 and 45(b)—with a different and higher standard.

*Laxalt v. McClatchy,* 809 F.2d 885, 888 (D.C.Cir.1987). The court thereafter held that

> a party can invoke discovery of materials protected by the Privacy Act through the normal discovery process and according to the usual discovery standards, and *the test of discoverability is the relevance standard of Rule 26(b)(1) of the FRCP.*

*Id.* at 889 (emphasis added). Given that the data base would be relevant to the challenge to the regulations as applied, disclosure should be allowed.

In addition, an appropriate protective order should be issued to protect the privacy of the individuals involved. *See id.* Neither party has submitted a proposed pro-

---

**6.** The cited statutory sections are definitional, and although they may *reflect* the intent alleged, they do not *state* such an intent.

tective order, although both admit that one may be appropriate. The parties are hereby directed to agree on and execute an appropriate protective stipulation.