**Lynn MARTIN, Secretary of Labor, United States Department of Labor, Plaintiff,**

**v.**

**NEW YORK CITY TRANSIT AUTHORITY, Defendant.**

**No. 89 CV 4284 (ADS).**

United States District Court, E.D. New York.

March 30, 1993.

For the Plaintiff: Harold Le Mar, Louis D. De Bernardo, Office of the Solicitor, U.S. Department of Labor, Region II, New York, N.Y.

For the Defendant: Myron D. Rumeld, Neil Howard Abramson, Proskauer, Rose, Goetz & Mendelsohn, New York, N.Y.

ORDER

ORENSTEIN, United States Magistrate Judge.

Gentlemen of the Jury: The one absolutely unselfish friend that man can have in this selfish world, the one that never deserts him, the one that never proves ungrateful or treacherous, is his dog.

Senator George Graham Vest, *Eulogy on the Dog*

If you use man's best friend in the course of your employment and live with him/her at home, the United States Department of Labor dogmatically believes that you should get paid for commuting with your canine to and from work. In this case, the plaintiff, the United States Department of Labor ("DOL"), is hounding the New York City Transit Authority ("TA") for its failure to compensate its police officers from the canine unit for the time spent traveling to and from their work stations and their assigned dog's house (hereafter referred to as "travel time"). The time period at issue in this case is October 1990 to the present.

On October 21, 1992, pursuant to Fed. R.Civ.P. 37, the TA doggedly sought to compel the disclosure of certain personal interview statements taken by the DOL during its investigation and certain internal DOL memoranda dealing with the issue of travel time. The plaintiff believes that the TA is barking up the wrong tree and wants to keep the TA on a short leash with respect to the TA's dog-tired pursuit of certain discovery. The DOL opposes discovery of the internal memoranda on the basis of the deliberative process privilege and the interview statements on the basis of the informant's privilege—the dogma of government. The privileges, as we will soon discover, are canines with very different fleas.

DISCUSSION

I. DELIBERATIVE PROCESS PRIVILEGE

1. *Introduction*

The defendant seeks certain DOL internal memoranda claiming that because (1) the DOL is likely to request that the court give its decision to prosecute the "travel time" issue the deference typically accorded agency decisions and (2) there exists evidence that the DOL has not been consistent in its interpretation of "travel time" issue with respect to other dog handler cases. Thus, the defendant contends that disclosure of the internal memoranda would provide support for defendant's position that the DOL decision to prosecute the instant case should not be given deference when considering plaintiff's summary judgment motion.

The TA made its initial request for these documents on May 25, 1990. The DOL objected to such request on August 6, 1990. After discussions between the parties did not resolve the dispute, the TA moved to compel on October 21, 1992. Karen Kessling, the Acting Administrator of Wage and Hour Division of DOL, executed an affidavit in support of the assertion of the privilege on October 13, 1992, over two years after the DOL objected to production on the ground of the deliberative process privilege.

The TA limits its request to internal memoranda regarding the issue of "travel time," whether it exists in an abstract form or with respect to cases that have never gone to litigation. The defendant does not seek documents which pertain to the question of whether to prosecute the defendant in the instant case. There are nine documents at issue. Five documents were

> generated at the request of the administrator of the Wage and Hour Division for comments, recommendations, suggestions, opinions by subordinates as to what their thoughts were on [the subject of travel time], with the idea that this would be taken into account to possibly make a decision on one aspect of travel time as hours worked.... There has not yet been a decision. That's five of the documents written by subordinates to the administrator.... Those memos were generated after the initiation of this lawsuit for the purpose of the administrator reaching a decision on one aspect of just the issue of travel time, not with respect to any particular litigation.... Those memos are totally separate from this litigation

*Transcript* at 70–72.[1] Three additional documents are

> draft memos that have not yet been sent, that take into account some of the recommendations, and as I said, these are draft documents that are still being deliberated and have not yet been finalized.

*Transcript* at at 72. The final document is one sent from the "Solicitor's Office in Washington to the acting administrator with recommendations about the draft documents—the three draft documents." *Transcript* at 72; *See Memorandum of Law In Opposition to Defendant's Motion to Compel,* at 17–18, dated Nov. 13, 1992.[2] The DOL opposes production of these documents based on the deliberative process or pre-decisional privilege.

2. *Discussion*

A proper assertion of the deliberative process privilege prevents the disclosure of documents which reflect "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975). The purpose of the privilege is to encourage frank discussion of ideas and policies. If the substance of these exchanges could be publicly disseminated, government could not effectively operate.

The deliberative process privilege must be properly invoked. The privilege must be invoked by the head of the agency which seeks to prevent disclosure. *Martin v. Albany Business Journal, Inc.,* 780 F.Supp. 927, 931, 934 (N.D.N.Y.1992). The "power to claim the privilege may be delegated by the head of the agency, but only to a subordinate with high authority." *Mobil Oil Corp. v. Department of Energy,* 520 F.Supp. 414, 416 (N.D.N.Y.1981). *See Albany Business,* 780 F.Supp. at 934 (Acting Administrator of Wage and Hour Division of DOL is a high level subordinate/delegatee who can properly invoke the deliberative process privilege); *Mary Imogene,* 136 F.R.D. at 44–45 (administrator who is appointed by President and confirmed by Senate qualified as a "high level subordinate"). As in *Albany Business,* this court finds that the Acting Administrator of Wage and Hour Division of DOL has the authority to invoke the privilege.

Delegation is only proper if the agency has issued guidelines on the use of the privilege. *Albany Business* 780 F.Supp. at 935.

> At a minimum, the guidelines must be of sufficient specificity to fulfill the interests behind requiring participation of the agency head in the invocation. *Coastal Corp.,* 86 F.R.D. at 518 (*citing Amoco Prod. Co. v. Department of Energy,* 1 Energy Mgmt. (CCH) ¶ 9752, at 9930 n. 16 (D.Del.1979)). The guideline requirement is indispensable because it ensures that the privilege is invoked consistently, *see Pierson,* 428 F.Supp. at 395, and that the delegatee official will be able to render decisions based on privileged information after reasoned judgment. *Mobil Oil,* 520 F.Supp. at 416; *Exxon Corp. v. Department of Energy,* 91 F.R.D. 26, 44 (N.D.Tex.1981). A delegation of authority which is devoid of even a mention of invocation of privileges is plainly insufficient to fulfill the purposes of the formal claim requirement. *See Mobil Oil,* 520 F.Supp. at 416.

*Id.* The agency must "provide 'precise and certain' reasons for preserving the confidentiality of the information." *Resolution Trust Corp. v. Diamond,* 137 F.R.D. 634, 641 (S.D.N.Y.1991) (*citing Mobil Oil Corp. v. Department of Energy,* 102 F.R.D. 1, 6 [N.D.N.Y.1983] ). In *Albany Business,* the court criticized the DOL for its "blanket delegation" of the Secretary's responsibilities to act on a particular issue. The court specifically noted that the orders of the Secre-

1. Citations to the transcript refer to the pages of the transcript of oral argument heard by the undersigned on January 29, 1993.

2. Documents drafted by a "junior" or "coordinate" person in an agency and addressed to a "senior person" reflect the "give-and-take" of the administrative deliberative process." *See Mary Imogene Bassett Hosp. v. Sullivan,* 136 F.R.D. 42, 47–48 (N.D.N.Y.1991). The DOL's litigating attorney's representation to the court that a final agency decision has not yet been made with respect to the travel time issue supports this court's conclusion that the documents at issue are pre-decisional.

tary of the DOL supposedly delegating the ability to invoke the privilege "provided no guidance." *Id.*

The person asserting the privilege must have "personally" reviewed the purported privileged matter. *Id.* In addition, the subordinate with high authority must provide specific reasons for the assertion of the deliberative process privilege with an affidavit *contemporaneous* with the assertion of such privilege. *See King v. Conde,* 121 F.R.D. 180, 189 (E.D.N.Y.1988) ("*accompanying* the[ ] objections must be a 'declaration or affidavit under oath ... from the responsible official within the agency who has knowledge of the principal matters to be attested to in the affidavit or declaration' " [emphasis added]); *e.g. Diamond,* 137 F.R.D. at 641 n. 2 (court questioned the propriety of the privilege claim where the high level subordinate executing the affidavit in support of the privilege did so long after the litigation attorneys asserted the privilege). However, as noted by in *Amoco Prod. Co. v. Department of Energy,* 1 Energy Mgmt. (CCH) ¶ 9752, at 9930 n. 16 (D.Del. 1979), the requirement that a subordinate with high authority personally assert the privilege

> does not necessarily mean that the Secretary must personally inspect each document as to which executive privilege is claimed, so long as he establishes guidelines of sufficient specificity ...

*Coastal Corp. v. Duncan,* 86 F.R.D. 514, 518 (D.Del.1980) (*quoting Amoco Prod. Co.,* 1 Energy Mgmt. (CCH) ¶ 9752, at 9930 n. 16).

A proper delegation requires that guidelines be in place to provide the requisite standards by which the DOL should be able to determine whether to invoke the privilege. *Albany Business,* 780 F.Supp. at 935. A delegation which is vague or amorphous permits inconsistent assertions of the deliberative process privilege. *Id.; Coastal Corp.,* 86 F.R.D. at 516. When this happens, the need for the privilege is undercut since a subordinate government official can prohibit disclosure by asserting a privilege without being able to determine whether such disclosure communication truly reflects sensitive material and is consistent with departmental policy.[3]

"These requirements are designed to guarantee both that the delegatee official has sufficient expertise in the agency's operations and functions, and will be able to render decisions on privileged information after reasoned judgment." *Mobil Oil,* 520 F.Supp. at 416; *see Albany Business,* 780 F.Supp. at 933; *Mobil Oil,* 102 F.R.D. at 6. In addition, these procedures promote consistent application of the privilege—a necessary attribute if the privilege truly is used to protect sensitive communications. *See Pierson v. United States,* 428 F.Supp. 384, 395 (D.Del.1977).

In light of these procedural requirements, the DOL responded to the defendant indicating that the documents were being withheld because they contain an

> analysis and evaluation of facts as well as recommendations regarding the issue of an employer's obligation to compensate an employee for time spent transporting an animal, used at the employee's place of work, between the employee's home and place of work. Such documents are predecisional and contain opinions, recommendations and advice regarding agency decisions.

*Supplemental Response to Defendant's Second Request for Production of Documents* at p. 2, July 16, 1992. Also included in this response were the names of the authors of each of the withheld documents. In an attempt to further comply with the procedural requirements of invoking the deliberative process privilege, three months later, the Acting Administrator of the Wage and Hour Division of the DOL executed an affidavit which stated:

> [th]e production of information which may disclose predecisional intra-agency or inter-agency deliberations including, the analysis and evaluation of facts, written summaries of factual evidence, and recom-

3. Based on the nature of the documents withheld as described in plaintiff's papers and the description provided by the DOL's counsel during oral argument, this court finds that the deliberative process privilege clearly protects them from disclosure. The question remains, however, whether the DOL properly asserted such privilege.

> mendations, opinions or advice on legal or policy matters, may have a chilling effect on the deliberative process by interfering with the free flow of advice and/or inhibiting candid discussion within the agency and/or between agencies.

*Affidavit* at ¶ 6.

> I have personally reviewed the facts of this case, including documents which are sought to be withheld pursuant to the ... deliberative process privilege.

*Affidavit* at ¶ 10.

> To protect the public interest in the free flow of advice and discussion within the Department of Labor and to prevent the chilling effect on the deliberative process within the Wage and Hour Division regarding the enforcement of the Act, I hereby invoke the deliberative process privilege to withhold information in this case which may disclose the agency's predecisional rationale in formulating enforcement policy and deciding which legal avenues to take against the Defendant.

*Affidavit* at ¶ 13. This court, as the court *Diamond,* 137 F.R.D. at 641, is concerned that the affidavit of high-level subordinate is a

> *post hoc* adoption of the decisions made by the [DOL's] attorneys, as opposed to a personal decision that it was important to assert the privilege and withhold the information ... [T]he circumstances of this case suggest that the decision to assert the privilege was made not by agency policymakers in consideration of the agency's interest in deliberative confidentiality, but ... as a matter of litigation strategy.

*Id.* Because of this concern, the court focused sharply during oral argument on the issue of whether the DOL had adopted internal DOL guidelines specifying when and why an assertion of deliberative process should be invoked.

In response to the court's questioning, the DOL's attorney stated during oral argument that he did not know if the Secretary of the DOL had adopted any guidelines with respect to the assertion of the deliberative process privilege. *Transcript* at 74. The following colloquy from oral argument in the instant case highlights the same concern Chief Judge McCurn of the Northern District of New York had in the *Albany Business* case regarding the consistent use of privilege by the DOL.

> [The Court]: Was it done pursuant to any guidelines, the review?
>
> [DOL]: Your Honor, I basically have to give you the same answer. I do not know ...
>
> [The Court]: Do you think the new Secretary of Labor is going to take up Judge McCurn's—I won't even call it invitation
>
> * * * * * *
>
> [The Court]: How long do you think the courts are going to be patient?
>
> [DOL]: Point well made, Your Honor, I do not know the answer to the question ...
>
> [The Court]: What I'm saying to you is the purpose of having guidelines is so that there be a consistency within the Department when there is a declaration or an assertion of [the deliberative process] privilege ...
>
> [DOL]: Your Honor, I'm not sure of what is being done in Washington. I'm not—I'm a litigation attorney. I not involved in the—
>
> [The Court]: Well, I appreciate that, but that's part of the purpose of why Judge McCurn said what he said.
>
> * * * * * *
>
> [The Court]: He appreciates that fact, which is all the more reason that before litigation counsel takes a position with regard to something that there be some consistency within the—by the client ...
>
> * * * * * *
>
> [The Court]: While you might take the one position, your colleague in Los Angeles might be taking a totally different position, absent guidelines from the Secretary.

*Transcript* at 73–74.

This court is disturbed by the total absence of DOL guidelines. Nevertheless, after reviewing the Acting Administrator's affidavit, the DOL's Supplementary Response, dated July 26, 1992, and the representation of the DOL's trial counsel during oral argument that the invocation of the privilege was thoroughly considered and balanced against

the needs of the defendant, this court is convinced that the absence of formal guidelines is not fatal to the assertion of privilege. Consequently, the privilege will be upheld at this time. However, the DOL should not rely on this case and determine that formal guidelines are not needed in the next case or that an affidavit of the type submitted in this case is sufficient for a proper invocation of the privilege. In the future, this court will require formal guidelines and an affidavit from a subordinate with high authority specifically articulating the reasons why the deliberative process privilege should be asserted for *specific* documents.

## II. INFORMANT'S PRIVILEGE

### 1. *Introduction*

Defendant moves to compel the disclosure of the names of the employees of the TA whom the DOL interviewed during its initial investigation. The interviews took place prior to December 1989, the date the instant case was filed. Defendant also moves to compel turnover of the notes or statements taken by the DOL's investigators during the interview of these individuals. *Transcript* at 16. Defendant claims that the substance of these interviews cannot be found out by any other means. Furthermore, defendant claims that even if the substance of these interviews could be replicated through depositions, depositions would reveal different results because the interviewees, who earlier might have given statements beneficial to the TA, would adjust their answers knowing that there was a possibility for financial gain if the DOL was successful. Defendant asserts that they have a right to know which dog handlers gave information beneficial to the DOL and which dog handlers gave information beneficial to the TA.

The DOL has already turned over declarations taken in 1992 from twelve individuals who were also interviewed by the DOL prior to the commencement of the instant case.[4] These declarations were taken by the DOL in support of its motion for summary judgment. Depositions of these individuals have already taken place and defendant was in possession of these declarations at that time.

### 2. *Discussion*

> The informant's privilege recognizes the responsibility of citizens to cooperate with law enforcement officials and, by providing anonymity, encourages them to assume this responsibility. With the threat of reprisal real and unprotected against, well-intentioned citizens may hesitate or decline to assist the government in tracking down wrongdoers. The threatened reprisal may be physical, but the privilege also recognizes the subtler forms of retaliation such as blacklisting, economic duress and social ostracism. [citations omitted]. The most effective means of protection, and by derivation the most effective means of fostering citizen cooperation, is bestowing anonymity on the informant, thus maintaining the status of the informant's strategic position and also encouraging others similarly situated who have not yet offered their assistance.

*Dole v. Local 1942, Intern. Broth. of Elec. Workers, AFL–CIO,* 870 F.2d 368, 372 (7th Cir.1989). The burden of establishing the need for disclosure of interview statements and the breaching of the informant's privilege is on the party seeking it. *Secretary of Labor v. Superior Care, Inc.,* 107 F.R.D. 395, 397 (E.D.N.Y.1985). The privilege, however, is qualified, "it yields when the identification of the informant or of a communication is essential to a balanced measure of the issues and the fair administration of justice." *Local 1942,* 870 F.2d at 372. The party opposing the "privilege may overcome it upon showing [the] need for the information outweighs the government's entitlement to the privilege." *Id.* at 373. The government's interest in enforcement and the employee's interest in

4. There appears to be approximately sixty dog handlers to which this litigation relates. *Transcript* at 16. In addition to the twelve dog handlers who have already been deposed and who have provided the DOL with sworn declarations, the TA has also deposed an additional eight dog handlers. With respect to these additional eight dog handlers, no interview notes have been turned over. There appears to be approximately forty other dog handlers who have not yet been deposed. The TA asserts that trying to interview this last group would be fruitless because they have little incentive to talk to the TA.

avoiding potential retaliation must be balanced against defendant's need for the requested information.

The informant's privilege applies whether the DOL solicited statements from an employee or the employee made a complaint to the DOL. *See Local 1942,* 870 F.2d at 370–371; *Albany Business,* 780 F.Supp. at 937; *Donovan v. First Federal Savings and Loan Association,* 1982 WL 2182 at *1, 94 Lab.Cas. ¶ 34,185 (S.D.Iowa 1982).

The informant's privilege applies to current as well as former employees of a company whose workers have communicated with the DOL. In *Hodgson v. Charles Martin Inspectors of Petroleum, Inc.,* 459 F.2d 303, 306 (5th Cir.1972), the court noted that the possibility of retaliation with respect to *former* employees is not remote and speculative.

> First, it is a fact of business life that employers almost invariably require prospective employees to provide the names of their previous employers as references when applying for a job. Defendant's former employees could be severely handicapped in their efforts to obtain new jobs if the defendant should brand them as 'informers' when references are sought. Second, there is the possibility that a former employee may be subjected to retaliation by his new employer if that employer finds out that the employee has in the past cooperated with the Secretary [of Labor]. Third, a former employee may find it desirable or necessary to seek reemployment with the defendant. In such a case the former employee would stand the same risk of retaliation as the present employee.

*Charles Martin,* 459 F.2d at 306; *Wirtz v. B.A.C. Steel Products, Inc.,* 312 F.2d 14 (4th Cir.1962); *Dole v. International Association Managers, Inc.,* 1991 WL 270194 at *2, 120 Lab.Cas. ¶ 35,544 (D.Ariz.1991); *Brock v. Czerwein,* 1986 WL 12563 at *1, 104 Lab.Cas. ¶ 34,806 (D.R.I.1986); *Donovan v. First Federal,* 1982 WL 2182, 94 Lab.Cas. ¶ 34,185 (S.D.Iowa 1982); *Donovan v. Giguere's Supermarket, Inc.,* 1981 WL 2328 at *1, 92 Lab.Cas. ¶ 34,062 (D.Me.1981); *Marshall v. Carlson Stapler & Shippers Supply, Inc.,* 1978 WL 1616, 83 Lab.Cas. ¶ 33,654 (D.Neb. 1978); *Marshall v. J.F. O'Neill Packing Co.,* 1977 WL 1680, 81 Lab.Cas. ¶ 33,510 (D.Neb. 1977); *Hodgson v. Sullivan,* 1972 WL 971, 69 Lab.Cas. ¶ 32,799 (D.Kan.1972).

a. *Applicability of Informant's Privilege or Waiver?*

The DOL takes the position that turning over of the twelve sworn declarations taken in 1992 of the police officers who were also interviewed prior to the filing of the complaint was not the functional equivalent of revealing the names of twelve informants. The court does not disagree with this contention. *See Dunlop v. J.D.C.N., Inc.,* 67 F.R.D. 505, 507 (E.D.Mich.1975) ("there is a difference between a *witness* whose identity is known and an *informant* whose identity is known" [emphasis added] ).

The DOL indicated during oral argument using certain vague language that there exists interview notes for some of the individuals who provided the DOL with declarations. *Transcript* at 60. After hearing argument on this issue, I ruled that a waiver of the informant's privilege had taken place as a result of: (1) interviewing the twelve individuals in 1992, (2) obtaining from them sworn declarations for use in a summary judgment motion, and (3) by turning such *declarations* over to the defendant prior to the deposition of these individuals. *See Transcript* at 61, 77, 92.

The DOL's intended use of these witnesses' declarations as a sword waives the DOL's right to shield their prior interview statements from disclosure. *But cf. Dole v. International Association Managers, Inc.,* 1991 WL 270194 at *2, 120 Lab.Cas. ¶ 35,544 (D.Ariz.1991) (identification of deponent as an employee who has already communicated with the DOL during an investigation does not waive privilege); *Dunlop,* 67 F.R.D. at 505 (even where deponent identified himself to defendant as an informer, court upheld the informant's privilege with respect to the disclosure of the informant's statements to the DOL); *see generally Brock v. Czerwein,* 1986 WL 12563 at *1, 104 Lab.Cas. ¶ 34,806 (D.R.I.1986) (DOL's disclosure of name of those affected by alleged violation does not waive privilege as to informant's identities).

Thereafter, on February 5, 1993, the DOL indicated in a letter to the court that there

were four individuals who submitted sworn declarations and who also were interviewed by the DOL in 1989. The DOL further stated that interview notes for these four individuals would be turned over to the defendant. The DOL attempted to retreat from its position taken at oral argument and stated that a waiver did not result from either turning over these sworn declarations or by a future production of the interview statements of the four police officers.[5] The DOL portrays the production of the interview notes and the submission of the declaration in support of its summary judgment motion as insufficient to constitute a waiver of the informant's privilege. This court disagrees.

In *In re Edmond,* 934 F.2d 1304 (4th Cir.1991), the appellate court approved of a bankruptcy judge giving petitioner the choice of denying his motion for summary judgment and going to trial or submitting to a deposition before the court would accept his affidavit in support of a motion for summary judgment. The court in *In re Edmond,* found that petitioner's assertion of the "Fifth Amendment privilege throughout the discovery frustrat[ed] the mounting of a solid defense to the summary judgment motion." *Id.* at 1306. The court would not permit petitioner to submit his version of the facts by affidavit and at the same time not permit his adversary to obtain information through a deposition which could present material issues of fact sufficient to rebut petitioner's motion for summary judgment. The instant case is not unlike *In re Edmond* where the court prohibited

> a party [from] seek[ing] to invoke the Fifth Amendment to avoid discovery while offering an affidavit to compel a certain result on summary judgment.

*Id.* at 1308. There, the court viewed the submission of the affidavit in support of summary judgment as operating like any other testimonial statement which would raise the possibility that the witness waived his privilege. *See United States v. Parcels of Land,* 903 F.2d 36, 43 (1st Cir.1990) ("Affidavits are voluntary statements made under oath and thus constitute testimonial statements").

Because the DOL is using the declarations as a sword and where such declarations may during trial be admitted as admissions of the defendant, the court finds that plaintiff must turnover the interview statements for the individuals who provided sworn declarations in support of the DOL's motion for summary judgment or, in the alternative, the DOL must forgo submission of the declarations in support of its motion. The defendant must have the opportunity to rebut the DOL's position that there are no material issues of fact. The DOL cannot hide behind the informants' privilege and prevent the disclosure of interview notes and then choose to include declarations authored by the same interviewees in support of a motion for summary judgment. *Transcript* at 61, 77.

b. *Invocation of Informant's Privilege*

■ The DOL supports its claim of privilege by stating that the Acting Administrator of the Wage and Hour Division

> personally reviewed the information over which ... [the DOL's is] asserting the privilege.... She reviewed the documents to determine whether or not, in her view, the informant's privilege was proper. She articulated reasons as to why she felt that the informant's privilege should be asserted, and I believe you can draw from her affidavit that she did the balancing that's required.

*Transcript* at 62–63. Specifically, the Acting Administrator in her affidavit invoked the informant's privilege in an attempt to protect the disclosure of the identities of persons who provided information to the DOL and any documents which would lead to their identities. The affidavit states the following:

> Complainants and other employees are reluctant to come forward with information about violations of the Act unless they are assured that their identities will not be revealed. The Department of Labor en-

5. The DOL also indicated in that letter that such disclosure does not represent a waiver of the informants' privilege with respect to any of the other interview statements. With respect to this statement, this court agrees that the use of the sworn declarations and the turnover of the four interview notes does not waive the informant's privilege with respect to any individual who had not also given a declaration to the DOL.

courages current and former employees to provide full disclosure of violations of the Act by assuring them that their identities will be kept confidential. Such confidentiality is essential to protect the public interest in the efficient enforcement of the Act and to protect the employees against retaliation and discrimination.

*Affidavit* at ¶ 5.

Defendant claims that early disclosure is proper because it will provide for a more effective cross-examination at trial. Such a claim is not a valid ground for disclosure of the interview notes prior to disclosure of plaintiff's witness list. *International Association,* 1991 WL 270194 at *3; *Carlson Stapler,* 1978 WL 1616 at *1. The fact that interview notes will be turned over just prior to the testimony of these individuals presents the same risk to the interviewee as would a turnover well in advance of trial. Thus, because the underlying purpose for the privilege is to prevent retaliation, the privilege must be upheld to prevent such potential retaliation for as long a period as possible. Obviously, upon testimony of an informant, the waiver of the privilege occurs and the DOL's obligation is then limited to protecting a testifying informant from any retaliation in the future by his/her employer.

Likewise, the mere cost of deposing all dog handlers who might have been interviewed by the government is not a sufficient ground to vitiate the informants' privilege. *Charles Martin,* 459 F.2d at 306 (the informer's privilege was upheld even though there was "a clear and convincing need for adequate preparation of [defendant's] defense because ... the costs of taking the depositions of all the individuals involved would be virtually prohibitive."); *Czerwein,* 1986 WL 12563 at *1 (avoiding expense of depositions is not the type of substantial need which overcomes the privilege); *Giguere's Supermarket,* 1981 WL 2328 at *1 (the "argument that disclosure could save a defendant time and expense by shortcutting its own discovery has not been accepted as a substantial need").[6]

The defendant has failed to prove that there is a compelling need for the interview statements. The opportunity to depose all the police officers affected by the travel time issue has existed since 1989 when the lawsuit was commenced. Consequently, the court sustains the informant's privilege with respect to any interview statements taken during the investigation by the DOL of individuals who have *not* provided the DOL with sworn declarations in support of the DOL's motion for summary judgment. Nonetheless, the court finds that plaintiff must turnover the interview statements for the individuals who provided sworn declarations in support of the DOL's motion for summary judgment or, in the alternative, the DOL must forgo submission of the declarations in support of its motion.

CONCLUSION

In accordance with the above, the court upholds the DOL's assertion of the informant's privilege and the assertion of the deliberative process privilege to the extent noted above.

SO ORDERED.

6. Apparently, the DOL has asserted the work-product privilege over the same documents which the deliberative process privilege was claimed. Because this issue was not ripe for disposition, the court gave the DOL until February 18, 1993 to submit a privilege log with respect to the all documents which it claims are covered by the work-product privilege. Since the DOL has not submitted such documentation, the work-product privilege can no longer be asserted.